BLOOMINGDALE STATE BANK, Plaintiff and Counterdefendant-Appellee, v. WOODLAND SALES COMPANY, Defendant and Counterplaintiff-Appellant.

Second District    No. 2—88—1124

Opinion filed July 20, 1989.

Terence M. Heuel, of Esposito & Heuel, of Chicago, for appellant.

Craig C. Westfall, of Nigro & Westfall, of Glendale Heights, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Woodland Sales Company (Woodland), appeals the order of the circuit court dismissing both counts of its amended counterclaim against plaintiff, Bloomingdale State Bank (Bank). The Bank originally brought an action against Woodland to recover on a loan secured by an automobile. Woodland counterclaimed alleging that the Bank improperly permitted Woodland's former president to withdraw

all the funds in Woodland's corporate account at the Bank. At issue is whether the trial court properly granted the Bank's motion for involuntary dismissal of the counterclaim after concluding that the Bank was following the directions of a party listed on the signature card when it transferred the funds. We affirm.

In 1984, when the note underlying the Bank's action against Woodland was made, Roy E. Dahlin was the president and sole shareholder of Woodland. In August 1985, Dahlin signed a contract to sell all of Woodland's corporate shares to the Gandalf Fund, Inc., an unrelated third party which was managed by Michael J. Kelly of Colorado. Gandalf Fund, Inc., became the sole shareholder of Woodland stock. Dahlin was retained as president and managed the day-to-day affairs of the business, including banking. The transaction and Dahlin's continuing relationship with Woodland were subsequently communicated to the Bank's president, Albert E. Radcliffe, during a chance meeting between Dahlin and Radcliffe in the Bank's lobby in late 1985. During that meeting, Dahlin told Radcliffe that he was selling Woodland over a period of time but that he was remaining as its president and that nothing would change.

On September 25, 1985, a new signature card for the corporate checking account was established. The signature card provided, in pertinent part:

> "I/We (Depositor) hereby establish with you the above account, and agree that this account shall be subject to the terms and conditions printed on both sides of this card and on the applicable by-laws, rules and regulations of BLOOMINGDALE STATE BANK, Bloomingdale, Illinois. Below is/are the duly authorized signatures which you will recognize in payment of funds or the transaction of the business on this account.
> 1. [/s/] Roy E. Dahlin        Title President
> 2. [/s/] Michael Troutman     Title Secretary
> 3. [/s/] Michael J. Kelly     Title Treasurer"

The signature card provided that only one authorized signature was required and further contained the corporate secretary's certification that:

> "[O]n September 25, 1985, at a meeting of the Directors of the Corporation, a resolution was adopted authorizing those persons whose signatures appear hereon to transact business relating to the account and any other business with BLOOMINGDALE STATE BANK on behalf of the Corporation."

On December 23, 1985, Dahlin attempted to rescind the stock sale

agreement and to recover total control of Woodland. Dahlin went to the Bank and effectuated a transfer of all funds in the Woodland account to a new account entitled "Roy E. Dahlin for the benefit of Woodland." Subsequently, Gandalf Fund, Inc., terminated Dahlin's employment and brought a separate proceeding against him to recover the transferred funds. Woodland alleged that it suffered loss of business as a consequence of the transfer and incurred attorney fees to recover the transferred funds. These claims for lost business and attorney fees were brought against the Bank in Woodland's counterclaim to the Bank's suit to recover on its note. The initial counterclaim was based on a conspiracy theory, alleging that Dahlin and the Bank conspired to transfer the money. That counterclaim was dismissed, and Woodland filed an amended counterclaim in two counts. Count I alleged the Bank was negligent in allowing Dahlin to withdraw the funds. Count II alleged the Bank breached its fiduciary duty in doing so.

The Bank filed a motion to dismiss. The Bank's motion was brought pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) as to count I, and pursuant to section 2—615 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) as to count II. The Bank supported its motion with Radcliffe's discovery deposition. Radcliffe's deposition revealed that he had known Dahlin in a lending relationship for 10 years. In late 1985, Dahlin informally met Radcliffe in the Bank's lobby and advised him that Woodland was being sold over a period of time, but that Dahlin was to stay on as president and that nothing would change. The deposition also established that, on December 23, 1985, Dahlin came to the Bank without an appointment and saw Radcliffe. Dahlin told Radcliffe that the sale of Woodland had either fallen through or been rescinded and that he wanted to open another account. The conversation lasted 5 to 10 minutes. Radcliffe directed other Bank personnel to help Dahlin, and a new account was opened by "Dahlin for benefit of Woodland." Exactly how the transfer of funds was made from the Woodland corporate account to the "Dahlin for benefit of Woodland" account is not clear from the record. It was not described, and no exhibits were offered. However, the Bank represented to the trial court that the transfer was done on Dahlin's signature. Radcliffe's deposition indicates that the Bank reviewed the corporate signature card and allowed the withdrawal of all the funds. The Bank did not call the other parties listed on the signature card, nor did it freeze the funds before opening the new account. Radcliffe had never met or talked with either of the other parties listed on the card. The account was

thereafter monitored while outstanding corporate checks were presented for payment. Dahlin was the only signatory on the new account.

At the hearing on the Bank's motion to dismiss, numerous references were made to Radcliffe's deposition. The court continued the cause for a ruling and invited the parties to submit additional documentary evidence and case law. After the hearing resumed and prior to a ruling on the Bank's motion, Woodland represented that it had retained an expert in banking who would testify that the Bank breached its fiduciary duty to Woodland. The court characterized the anticipated testimony as a legal conclusion. The court subsequently ruled that, based on the pleadings, deposition, and case law, the Bank's motion was well taken. The court concluded that the Bank had a duty to first honor the direction of the parties to the signature card; therefore, Woodland's assertion that the Bank's actions constituted negligence and breach of a fiduciary duty must fail. The court invited Woodland to submit any new material in a motion for reconsideration and entered a written order granting the Bank's motion dismissing both counts pursuant to section 2—619. Woodland did not object to the form of the order.

Woodland subsequently filed a motion for reconsideration and an affidavit prepared by its expert. The affidavit introduced was that of Dr. Owen K. Gregory, a professor of economics and management. Gregory reviewed Radcliffe's deposition and other materials and made the following conclusions:

"4. A bank owes its customers duties beyond those specified in the bank's signature card including a duty to exercise care in the handling of depository funds in its possession. In my opinion, under the circumstances of this cause, the failure of the bank to confer with Woodland Sales Co. prior to permitting Roy E. Dahlin to close Woodland's account and transfer all the corporate funds into a new account under only his own personal control constituted not only a breach of that duty but also gave rise to liability on the part of the bank to Woodland for damage suffered by Woodland as a result of loss of control of those funds.

5. Furthermore, as a general matter, the deposit of funds into a banking institution by a customer results in the creation not only of a debtor-creditor relationship but of a fiduciary relationship as well."

The court denied Woodland's motion for reconsideration, noting that the affidavit presented no new facts and merely asserted a legal

conclusion. Woodland now appeals from the dismissal of its amended counterclaim against the bank.

■ Initially, we note that Woodland has pleaded its action as a cause under negligence rather than under the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 1—101 *et seq.*). While the statutory provisions provide some guidance in cases of this nature, we need not look to those principles to reach a disposition in this cause since the issue raised relates solely to the court's authority when ruling on a motion to dismiss. Similarly, we note that, while not raising the issue below, Woodland argues on appeal that the Bank is liable under section 9 of "An Act concerning liability for participation in breaches of fiduciary obligations" (Ill. Rev. Stat. 1987, ch. 17, par. 2009). The effect of this statute is to replace a negligence standard with a determination of whether the Bank had actual knowledge of a breach of fiduciary duty or knowledge of such facts that its action of receiving the deposit amounts to bad faith. (Ill. Rev. Stat. 1987, ch. 17, par. 2009.) Since Woodland did not plead this statute in the court below, we consider it waived on appeal. See *IMM Acceptance Corp. v. First National Bank & Trust Co.* (1986), 148 Ill. App. 3d 949, 956; *Printpack, Inc. v. Container Technologies, Inc.* (1984), 124 Ill. App. 3d 568, 575.

Woodland contends that the trial court erred in dismissing its amended counterclaim since Woodland pleaded a *prima facie* case in negligence and the Bank's motion to dismiss admitted all well-pleaded facts as true. Neither party has adequately briefed the proper scope of review on a motion to dismiss at either the trial or appellate level. Woodland merely asserts that the court exceeded its authority in making findings of fact and the cause should not have been dismissed under section 2—619 because it pleaded a *prima facie* case. We disagree.

■ ■ The purpose of section 2—619 is to provide a means to dispose of *issues of law or of easily proved issues of fact,* with a reservation of a jury trial as to disputed questions of fact. (*Inland Real Estate Corp. v. Lyons Savings & Loan* (1987), 153 Ill. App. 3d 848, 853-54; see *Consumer Electric Co. v. Cobelcomex, Inc.* (1986), 149 Ill. App. 3d 699, 703.) In ruling on a motion to dismiss brought pursuant to section 2—619, the trial court may consider the pleadings, affidavits, and *deposition evidence.* (See *Dunn v. Baltimore & Ohio R.R. Co.* (1987), 162 Ill. App. 3d 97, 104; *Gaudynski v. Corbett* (1980), 81 Ill. App. 3d 910, 914-15.) A motion to dismiss should not be allowed if material facts are controverted and where the court must weigh the evidence. See *Marvel Engineering Co. v. Matson, Driscoll & D'Amico* (1986), 150 Ill. App. 3d 787, 796.

Section 2—619 provides, in pertinent part:

"(a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds.

* * *

(9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim.

* * *

(c) If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion." (Ill. Rev. Stat. 1987, ch. 110, pars. 2—619(a)(9), (c).)

The term "affirmative matter" as used in section 2—619(a)(9) has been defined as a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. *Consumer Electric Co.*, 149 Ill. App. 3d at 703.

In the instant action, the Bank did not seek dismissal on the ground that it was not negligent. Rather, in filing its motion under section 2—619, the Bank alleged that the signature card provisions barred a claim of negligence. In ruling on the motion, the trial court characterized the motion to dismiss under section 2—619 as similar to a motion for summary judgment. Ordinarily, it is not permissible to transform a motion to dismiss into a motion for summary judgment. (See *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 642.) However, in this case it appears that the court made a summary determination *of a bar to the negligence claim* and did not make a summary determination of the negligence claim itself. Stated otherwise, section 2—619 requires a defendant to prove with sworn documents an affirmative matter which bars a claim. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).) The court must then make factual determinations as to that matter based on those documents. The record shows that the trial court dismissed the counterclaim of negligence after reviewing the pleadings and Radcliffe's deposition and concluding that the Bank complied with the contract and therefore could not be held negligent for something Woodland had authorized it to do. Thus, the court was not entering summary judgment, but finding that the Bank sustained its burden of establishing a bar to the claim of negligence. The same

analysis would apply to the claim of breach of fiduciary duty.

Woodland nonetheless argues that the circuit court gave no weight to the affidavit of its expert witness and there was a dispute as to material fact. That affidavit did not introduce any new evidence or facts, but only purported to state that the Bank breached the standard of care of the industry based on the other facts which were presented before the court. The court determined that the affidavit contained legal conclusions only and did not weigh it as evidence. Nothing in this record compels us to conclude that the court exceeded its authority in making that determination.

For these reasons, the order of the circuit court is affirmed.

Affirmed.

LINDBERG and DUNN, JJ., concur.