(No. 74218.—

VINCE TORCASSO, d/b/a Mazz Media, Appellant, v.
STANDARD OUTDOOR SALES, INC., *et al.*, Appellees.

*Opinion filed December 16, 1993.*

BILANDIC and McMORROW, JJ., took no part.

HEIPLE, J., dissenting.

James A. Rooney, of Chicago, for appellant.

Stanley J. Horn, of Chicago, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

The plaintiff, Vince Torcasso, doing business as Mazz Media (Torcasso), brought suit on March 14, 1989, against the defendants, Standard Outdoor Sales, Inc. (Standard), and Richard Swoboda (Swoboda), alleging ultimately in his amended complaint the breach of a bro-

kerage contract and fraud. Approximately one year earlier Standard had brought suit successfully against Torcasso to recover a commission alleged to be due under the terms of the brokerage contract. On the basis of both *res judicata* and collateral estoppel, the circuit court of Cook County granted the defendants' motion brought under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)) to dismiss Torcasso's amended complaint. Affirming (232 Ill. App. 3d 500), the appellate court concluded that the doctrine of *res judicata* barred Torcasso's suit. Pursuant to Supreme Court Rule 315 (134 Ill. 2d R. 315), this court granted Torcasso leave to appeal. For reasons that follow we reverse the judgment of the appellate court and remand the cause of action to the circuit court for further proceedings.

Section 2—619 furnishes a mechanism for the disposition of issues of law or easily proved issues of fact. (*Sjogren v. Maybrooks, Inc.* (1991), 214 Ill. App. 3d 888, 891.) Section 2—619(a)(4) (735 ILCS 5/2—619(a)(4) (West 1992)) provides that, within the time for pleading, a defendant may file a motion for dismissal of the cause of action upon the ground that the cause is barred by a prior judgment. In ruling upon a motion to dismiss brought pursuant to section 2—619, the trial court may properly consider, among other things, both pleadings and depositions. *Bloomingdale State Bank v. Woodland Sales Co.* (1989), 186 Ill. App. 3d 227, 232.

In the prior suit by Standard against Torcasso, Standard alleged that on approximately May 15, 1984, Standard entered into an oral agreement with Torcasso to act as Torcasso's representative in the selling of advertising space on an outdoor sign owned by Torcasso. Standard alleged further that the contract provided that it was to receive a commission for procuring an advertiser who would use the space, that it did procure such an adver-

tiser, and that Torcasso received $2,150 per month as gross advertising revenue. Standard alleged finally that in response to its demand for the commission Torcasso refused to pay "all of the commission due and owing, leaving a balance of $2,050.00 plus interest." Standard prayed for judgment in the amount of the balance together with interest and costs.

In his answer to Standard's complaint in the prior suit, Torcasso admitted that Standard had demanded a commission in the amount of $2,050 and that he had refused to pay a commission but denied that any commission was due and owing to Standard. As an affirmative defense, Torcasso alleged that the parties to the oral contract of May 15, 1984, had terminated the contract by mutual agreement on or about October 15, 1984, at which time Standard had not procured an advertiser for the sign. Torcasso alleged further that no advertiser was found for the sign until March 25, 1985, when Torcasso leased the sign to Delta Sonic Car Wash Systems (Delta) for a term of six months at a monthly rate of $1,300. Defendant sought dismissal of the complaint with prejudice. Following a trial the circuit court entered judgment on November 16, 1988, in favor of Standard and against Torcasso in the amount of $3,400.

As stated above, Torcasso brought the instant suit about four months later on March 14, 1989. In his two-count amended complaint he alleges in the first count, for breach of contract, that the defendants breached the brokerage agreement by failing to use their best efforts to lease the west side of the sign. He seeks damages in the amount of $12,000. In that count Torcasso makes the following allegations. The defendant Swoboda holds himself out as the president and sole shareholder of the defendant Standard. On or about April 30, 1984, Torcasso and the defendants entered into a contract whereby the defendants would be employed as a broker

to seek tenants for Torcasso's sign, which was to be rented at a net monthly rate to Torcasso of $1,500 per side. In June of 1984 Larry Roesch Chevrolet, Inc., approached Torcasso about renting the west side of the sign, and in response Torcasso advised the representative to contact the defendants to see whether the sign had been rented. When the representative did so, Richard Swoboda told this person that the west side of the sign had been rented through the defendants' efforts to R.J. Reynolds Tobacco Company (Reynolds) under a three-year contract. At the time of this statement, however, the west side of the sign had been rented to no one. Shortly thereafter Torcasso called Swoboda, asking him whether the west side of the sign had been rented to Reynolds; in response Swoboda told Torcasso that he had a firm commitment from Reynolds and that all that remained to be done was the "paperwork." In June of 1984 a representative of Leslie Oldsmobile-Volkswagen, Inc., approached Torcasso about renting the west side of the sign, but because of Swoboda's earlier representations to Torcasso plaintiff advised the representative that he was awaiting a written contract from Reynolds. The west side of the sign remained unleased until March 25, 1985, when Torcasso himself leased that side of the sign to Delta.

In the second count of his amended complaint, for fraud, Torcasso makes many of the same allegations but alleges further as follows. When, in June of 1984, the sign had been rented to no one and that fact was known to the defendants, the statement by Swoboda to the representative of Larry Roesch Chevrolet, Inc., was a fraudulent misrepresentation designed to prevent the leasing of the sign to anyone other than the defendants' usual and customary clients. Similarly, the representation by Swoboda to plaintiff that he had a firm commitment from Reynolds to rent the sign and that only routine for-

malities remained to be performed was an untrue statement known to be untrue when Swoboda made it and was a fraudulent misrepresentation made to prevent the leasing of the sign by anyone other than the defendants' clients. As a result of his reliance upon these fraudulent misrepresentations, Torcasso did not attempt to lease the sign to either Larry Roesch Chevrolet, Inc., or Leslie Oldsmobile-Volkswagen, Inc. Plaintiff seeks compensatory damages in the amount of $12,000 and punitive damages in the amount of $20,000.

The record indicates that in the prior lawsuit Standard sought and recovered from Torcasso a commission arising out of the lease of the west side of the sign to Reynolds. Of the record in the earlier suit only the pleadings and judgment are included in the record for our review. There is no record of what transpired at trial in the previous suit. Attached as an exhibit to the defendants' motion to dismiss Torcasso's amended complaint in the present suit under section 2—619 is the deposition of Torcasso taken for purposes of discovery in the prior suit. In this deposition Torcasso stated that although Reynolds eventually rented the west side of the sign, it did not do so until October of 1985, after the expiration of the six-month lease with Delta in September of that year. Torcasso himself rented the west side of the sign to Reynolds at that time, he said, although Swoboda had discussed a lease of this side of Torcasso's sign with that company's agent approximately one year before Torcasso called Reynolds' agent about leasing the sign. Torcasso expressed his understanding that the sales relationship between the defendants and himself was a non-exclusive one, adding that Swoboda had told him, however, "that a three-year contract was a lot better than a one-year contract, and that I shouldn't rent [the sign]."

Following hearings the circuit court granted the defendants' motion to dismiss the plaintiff's amended

complaint and denied Torcasso's motion to reconsider. Torcasso appealed without avail, the appellate court concluding that at the heart of both the prior and the present lawsuits is a single group of operative facts, namely, the performance of the brokerage agreement. The evidence needed to sustain the present suit, the appellate court said, would have controlled the outcome of the prior one.

Torcasso contends that the cause of action in the prior lawsuit by Standard to recover a broker's commission is not the same cause of action as the present one and that, as a consequence, the doctrine of *res judicata* is inapplicable in bar of the instant suit. In the alternative, Torcasso maintains that in ruling that *res judicata* bars an action that could have been but was not pleaded as a counterclaim in the prior action between the parties, the appellate court has misconstrued the plain meaning of two sections of the Code of Civil Procedure having to do with the use and pleading of counterclaims, specifically, section 2—608(a) and section 2—614(a) (735 ILCS 5/2—608(a), 2—614(a) (West 1992)).

Under the doctrine of *res judicata*, a final judgment rendered on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. (*People v. Kidd* (1947), 398 Ill. 405, 408.) Where there is identity of parties, subject matter, and cause of action, the doctrine of *res judicata* extends not only to every matter that was actually determined in the prior suit but to every other matter that might have been raised and determined in it. (*Boddiker v. McPartlin* (1942), 379 Ill. 567, 577.) A cause of action consists of a single group of facts giving the plaintiff a right to seek redress for a wrongful act or omission of the defendant. (*Pierog v. H.F. Karl Contractors, Inc.* (1976), 39 Ill. App. 3d 1057, 1060-61.) Although a single

group of operative facts may give rise to the assertion of more than one kind of relief or more than one theory of recovery, assertions of different kinds or theories of relief arising out of a single group of operative facts constitute but a single cause of action. (*Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 64.) The test generally employed to determine the identity of causes of action for purposes of *res judicata* is whether the evidence needed to sustain the second action would have sustained the first. (*Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 376; *Pierog*, 39 Ill. App. 3d at 1061.) If the same facts are essential to maintain both proceedings or the same evidence is necessary to sustain the two, there is identity between the causes of action asserted, and *res judicata* bars the latter one. (*Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 157.) Identity of the causes of action may be determined from the record as well as from the pleadings in both causes. (*Pierog*, 39 Ill. App. 3d at 1061.) The burden of establishing *res judicata*, or estoppel by judgment (*Pierog*, 39 Ill. App. 3d at 1060), is upon the party invoking it, and to operate as such it must either appear upon the face of the record or be shown by extrinsic evidence that the precise question, or point, was raised in determining the former suit. *City of Geneseo v. Illinois Northern Utilities Co.* (1941), 378 Ill. 506, 512.

In the instant case the appellate court appears to have concluded that the evidence needed to sustain the present suit by Torcasso would have controlled the outcome of the prior suit by Standard for the reason that in the prior suit the circuit court decided that Swoboda had procured an advertiser and was entitled to a commission. However, that advertiser, Reynolds, did not lease the sign until well after the period of time relevant to both of Torcasso's claims in the present suit for fraud and breach of contract. Although evidence essential to sustain Standard's suit to recover its commission for the lease to Reynolds commencing in Octo-

ber of 1985 overlaps evidence essential to sustain the present one in some respects, it differs substantially from that necessary to sustain Torcasso's claim of fraudulent misrepresentation by Standard in approximately June of 1984 and his claim of breach of contract by Standard and Swoboda for failure to use their best efforts to procure an advertiser during the approximately eight-month period from, roughly, July of 1984 to March of 1985. Moreover, although proof of the existence of the brokerage agreement is necessary to maintain both the prior suit by Standard and the present suit by Torcasso, the subsequent lease to Reynolds, while crucial to Standard's claim to a commission for procuring a lessee, is plainly irrelevant to either of Torcasso's claims. In short, the evidence needed to sustain Torcasso's action could not have sustained Standard's, and the facts necessary to the two proceedings are widely dissimilar.

Further, the record does not show that the same evidence was necessary to prove both Torcasso's affirmative defense and the claims he advances in the present suit. The pleadings, by themselves, suggest no inherent nexus between Torcasso's allegation in his affirmative defense in the prior suit that the contract had been terminated by mutual agreement of the parties on or about October 15, 1984, and his allegations in his amended complaint in the present suit concerning the defendants' fraudulent misrepresentation and breach of contract. Nor may a nexus between these allegations in the two suits be gleaned with any certainty from this record as a whole. Indeed, the factual basis of Torcasso's allegation that the parties had mutually agreed to terminate the brokerage contract cannot be discerned with any clarity upon an examination of this record. In the absence of either a record of proceedings at the trial of Standard's cause of action or any stipulation, for example, by the parties as to what transpired there, it is not possible to determine that in the prior suit any evidence at all was introduced pertaining to Torcasso's dealings with representatives

of potential lessees in reliance upon representations made by Swoboda. Such evidence is clearly crucial to the successful prosecution of Torcasso's suit. Nevertheless, this record fails to establish its relevance to the prior suit for any purpose, including that of proving the allegation in Torcasso's affirmative defense that the contract had been terminated by the mutual agreement of the parties.

Here the test to determine the identity of the two causes of action for purposes of *res judicata* has not been met. It does not appear upon the face of the record, and defendants have not shown by extrinsic evidence, that the precise questions raised by Torcasso concerning the defendants' performance of the contract and their fraudulent misrepresentations made with respect to it were raised in the former suit. Hence, the defendants have failed to carry their burden of establishing *res judicata*. Therefore, it was error for the appellate court to conclude, as the circuit court had done, that by virtue of the doctrine of *res judicata* the judgment in the previous suit constitutes an absolute bar to the present one.

In an argument perhaps more appropriately addressed to the application of the doctrine of *res judicata,* the defendants seem to suggest that the principal issue to be litigated in the present suit is identical to that in the prior suit, that issue being "whether Standard was entitled to recover damages from Torcasso for the same sign and the same contract." As a consequence, defendants urge, consideration of the issue is precluded under the doctrine of collateral estoppel, and their motion for dismissal of Torcasso's amended complaint was properly granted. However, as our discussion with respect to the principles of *res judicata* reveals, the record refutes any claim that the principal issues in the two suits are the same.

In light of our disposition with respect to the application of the doctrine of *res judicata,* we need not consider Torcasso's contention that the appellate court has misconstrued

the plain meaning of sections 2—608(a) and 2—614(a), pertaining to the use and pleading of counterclaims.

For the foregoing reasons the judgments of the appellate court and the circuit court are reversed, and the cause is remanded to the circuit court for further proceedings.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*

JUSTICES BILANDIC and McMORROW took no part in the consideration or decision of this case.

JUSTICE HEIPLE, dissenting:

The question presented by this case is whether a second lawsuit between the same parties and involving the same brokerage agreement is barred by application of the doctrine of *res judicata*. The trial judge thought it was and dismissed the case. The appellate court affirmed. (232 Ill. App. 3d 500.) This court reverses. The appellate court got it right.

The majority opinion adequately sets forth the facts and adequately marshals the law. My only disagreement is with its conclusion. As to the application of the doctrine of *res judicata*, there is supporting precedent on both sides of the proposition before the court. See for instance, *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, and *Adams v. Pearson* (1952), 411 Ill. 431, as well as other cases cited in both the majority opinion and the opinion below.

Finality is an important goal in litigation. Piecemeal and seemingly endless litigation imposes a financial burden which people can ill afford. Voltaire, for instance, remarked that he was financially ruined but twice. Once when he lost a lawsuit. Once when he won one.

For reasons of sound public policy and judicial economy, I respectfully dissent from the decision of the court.