2019 IL App (1st) 182347-U

SIXTH DIVISION
DECEMBER 13, 2019

No. 1-18-2347

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| GLENNA MO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 L 5626 |
| | ) | |
| RHOMBUS ASSET MANAGEMENT, INC., and | ) | |
| MARK PROSKINE, | ) | Honorable |
| | ) | James E. Snyder, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The plaintiff's action is barred by *res judicata*; the trial court did not err in granting the defendants' motion to dismiss.

¶ 2    The circuit court of Cook County dismissed a complaint by the plaintiff-appellant, Glenna Mo, against the defendants-appellees, Rhombus Asset Management, Inc. (Rhombus) and Mark Proskine, on the basis that *res judicata* barred the action. Mo now appeals. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                           BACKGROUND

¶ 4     In 1998, Mo and Proskine, along with Alexander Herdan and Russell Wasendorf (collectively the Rhombus shareholders), formed Rhombus, an Illinois corporation, to finance the development of Romanian real estate. Proskine is the president of Rhombus. At the time of Rhombus' formation, Mo served as secretary and was issued 13,600 shares in Rhombus, which represented 17% of the total issued shares.

¶ 5     In 2000, the Rhombus shareholders formed Central and Eastern European Investment Fund (CEEIF), an entity incorporated under the laws of Cyprus, as a holding company for Rhombus's Romanian projects.[1] CEEIF, through Romanian subsidiaries and affiliates, engaged in the purchase, development, and sale of real estate in Romania. Each of the Rhombus shareholders was issued shares of stock in CEEIF. Mo received 154,345 shares, which represented 11% of the 1.4 million shares issued at the time.

¶ 6                         The June Agreement

¶ 7     In June 2006, the Rhombus and CEEIF shareholders held a meeting to determine upcoming dividend payments to all shareholders. According to Mo, the purpose of the June 2006 meeting was to resolve an ownership interest dispute, as she had been demanding an increased percentage of ownership in Rhombus and CEEIF for some time. Mo retained attorney Mitchell Pawlan to assist in pursuing her demand. During the meeting, Mo and Pawlan presented the other shareholders with several spreadsheets that purportedly showed the amounts that third-party lenders, solicited by Mo, had loaned to Rhombus and CEEIF, as well as the amounts of Mo's personal capital contributions to Rhombus and CEEIF's projects.

---

[1]CEEIF is not a party to this appeal.

¶ 8    The spreadsheets referred to loans from a third-party lender, Robert Lee, as capital contributions from Mo to Rhombus' projects, and not as loans to be repaid by Rhombus. Other shareholders in attendance asserted that, during the meeting, Mo told them that she would personally repay the loans from Lee in exchange for an increased percentage of ownership in Rhombus and CEEIF. Based on these representations, the shareholders agreed to give Mo a higher percentage of ownership in Rhombus and CEEIF.

¶ 9    At the conclusion of the meeting, all of the Rhombus and CEEIF shareholders, except for a new shareholder, Edwin Warmerdam, signed a document drafted by Pawlan (the June Agreement). The three-page agreement listed the adjusted percentage of ownership in CEEIF, subject to dilution: 30% for Hergan; 23% for Proskine; 20% for Mo (up from 11%); 15% for Wasendorf; and 12% for a new shareholder, Coplader, Ltd. The June Agreement did not address percentage of ownership in Rhombus, but did provide that Mo would receive 25% of distributions from several of Rhombus' upcoming projects. The shareholders agreed to cause CEEIF to make dividend payments based on their adjusted percentages of ownership.

¶ 10    Before the dividend distribution, Mo told Pawlan that she wanted to renege on the June Agreement and require Rhombus to repay Lee's loans that she had represented she would pay. Pawlan told Mo that the June Agreement obligated her to repay Lee, and that if she intended to renege on that obligation, she should stop the anticipated wire transfer of her upcoming dividend payments from Rhombus and CEEIF. Mo did not stop the wire transfer.

¶ 11    On June 22, 2006, based on the adjusted percentages of ownership, Rhombus paid a dividend to Mo of $844,660, and on June 29, 2006, CEEIF paid her a dividend of $4,194,892.50. After she received these payments, Mo instructed Pawlan to inform the other shareholders that she would not be repaying the Rhombus loans which had been made by Lee.

¶ 12     Neither Mo nor Rhombus repaid the principal on any of Lee's loans. Lee eventually obtained a judgment against Rhombus in the amount of $1,934,097.60 for Rhombus' failure to repay his loans.

¶ 13                                    Prior Litigation

¶ 14     On March 12, 2009, Rhombus and CEEIF filed a complaint against Mo, alleging that she breached her fiduciary duty by failing to repay Lee's loans and that she was unjustly enriched as a result.

¶ 15     Mo filed a counterclaim against Rhombus and CEEIF, seeking a declaration that Mo was entitled to additional shares in Rhombus and CEEIF (the 2009 counterclaim). Mo argued that she was entitled to additional shares based on "the significant capital contributions" she had made to Rhombus and CEEIF. She referenced the June Agreement in her argument. Mo also claimed that Rhombus breached an oral contract with her by failing to reimburse her for interest payments she had made on Rhombus' behalf to its lenders, including Lee.

¶ 16     On February 19, 2015, the trial court issued two separate judgments on Rhombus and CEEIF's claims and on Mo's counterclaims. First, the trial court found that Mo owed a fiduciary duty to Rhombus, CEEIF, and the other shareholders, and that Mo had breached those duties when she falsely represented that she would repay Lee's loans on Rhombus' behalf, causing Rhombus to incur liability to Lee when the loans were not repaid. The court further concluded that Mo was unjustly enriched at Rhombus and CEEIF's expense because Mo's agreement to repay Lee's loans resulted in her receiving nearly double the dividend payment she would have received otherwise.

¶ 17      The trial court's other judgment found in favor of Rhombus and CEEIF on both counts of Mo's counterclaims. Specifically, the court found that Mo was not entitled to additional shares in Rhombus and CEEIF, and that Mo had failed to prove her breach of contract claim against

Rhombus and CEEIF.

¶ 18　Mo appealed. In her appellate brief, Mo argued that she had repeatedly demanded to receive additional shares from Rhombus, but to no avail. She stated that she "thought the June Agreement would accomplish what she sought," but she "soon learned that the words of a contract matter less than the actions of her partners." Mo further argued: "At a minimum, [Mo] is entitled to all that she was afforded in the June Agreement," including the 25% distribution on Rhombus' projects listed in the June Agreement.

¶ 19　On September 17, 2017, this court affirmed both of the trial court's judgments, including the judgment against Mo on her counterclaim holding that she was not entitled to additional shares. *Rhombus Asset Management, Inc. and Central and Eastern European Investment Fund v. Glenna Mo and Eastern Pioneer Capital, Inc.*, 2017 IL App (1st) 152287-U (unpublished order under Illinois Supreme Court Rule 23).

¶ 20　　　　　　　　　　　　The Instant Case

¶ 21　On June 7, 2016, Mo initiated the instant action against Rhombus and Proskine. The operative pleading is her amended complaint, which contained four counts. Count I was a breach of contract claim, which alleged that Rhombus and Proskine "breached their duty to [Mo] in failing to provide her with ownership, distributions and reimbursements in accordance with the June Agreement." The remaining three counts alleged fraudulent concealment, accounting, and alter ego liability.

¶ 22　Rhombus and Proskine filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619 (West 2016). Their motion to dismiss argued that Mo had already litigated her claim for greater ownership, distributions, and reimbursements in her

2009 counterclaim, and so *res judicata* and collateral estoppel now barred her instant action. The motion averred:

> "[R]egardless of whether Mo pressed her claim for a greater ownership and a larger distribution from the sale of projects on theories other than the purported [June Agreement] is irrelevant. *** [H]er claims for greater ownership in CEEIF and Rhombus have been fully and finally adjudicated against her and her claims in this case are therefore barred."

Regarding the remaining counts, the motion argued that the fraudulent concealment claim was frivolous, that Mo failed to state a claim for accounting, and that the alter ego liability claim lacked merit.

¶ 23   During a hearing on the motion to dismiss, Mo's counsel argued that *res judicata* could not bar her breach of contract claim because it arose out of the June Agreement, whereas her claim in the 2009 counterclaim was based on "her rights as a shareholder" and "not the June Agreement." The following colloquy ensued:

> "The Court: But she's making reference to [the June Agreement] in her [2009] counterclaim. She certainly could have raised it. She's aware of it."
>
> [Mo's Counsel]: *** The basis of the complaint of her counterclaim was not the June [A]greement. It was on her rights as a shareholder generally in the corporate structure. Initially -- the way this worked initially --

The Court: But she could have raised it in this transaction, same parties, same series of transactions. There may have been more involved in the other case.

[Mo's Counsel]: Well, it's not the same parties, too, because Proskine's not involved in the [2009] counterclaim. *** You don't have CEEIF [in this case]. Some of the allegations are similar --

The Court: Because she didn't raise the claim against [Proskine], but she could have.

[Mo's Counsel]: *** [I]t was a declaratory judgment action was -- that sought -- there was a derivative -- shareholder derivative suit. And the action on the contract could not have been presented in context of a Chancery action."

The Court: It certainly could have.

***

The Court: This particular case includes in that other action something that suggests that to the extent to which she has a claim, she knew about it then, it was the same parties, it's many of the same facts, and she perhaps elected not to seek relief for it, but she even pled it.

***

[Mo's Counsel]: *** I understand your Honor has made a ruling on *res judicata*, but I do want to make a record that there are pending depositions --

> The Court: I made a ruling on estoppel.
>
> [Mo's Counsel]: Okay.
>
> The Court: Okay. That's a final order of the circuit court."

¶ 24    The trial court then granted Rhombus and Proskine's motion to dismiss. The court entered a judgment dismissing Mo's amended complaint, with prejudice. This appeal followed.

¶ 25                                    ANALYSIS

¶ 26    We note that we have jurisdiction to consider this matter, as Mo filed a timely notice of appeal. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 27    The sole issue on appeal is: whether the trial court erred in granting Rhombus and Proskine's motion to dismiss. Specifically, Mo argues that the trial court erred in dismissing the breach of contract claim in her amended complaint on the basis of *res judicata*.[2] She claims that she brought the 2009 counterclaim "in her capacity as a shareholder," whereas she brought the instant action as an individual, and so the parties differ between the two cases. She further highlights that Proskine was not a party to the 2009 counterclaim. Additionally, Mo argues that an identity of causes of action does not exist here for *res judicata* to apply, as the instant case is a breach of contract claim seeking damages, and the 2009 counterclaim was a breach of fiduciary duty claim which sought declaratory relief. Finally, Mo argues that there was never a final judgment regarding the June Agreement, and so *res judicata* is irrelevant.[3]

---

[2]Mo does not challenge, on appeal, the dismissal of the fraudulent concealment, accounting, or alter ego liability claims in her amended complaint. Thus, she has forfeited any argument related to those claims. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("[p]oints not argued [in appellant's opening brief] are forfeited").

[3]Mo additionally argues that during the discovery stages of the instant case, the trial court granted her motion *in limine* excluding "any reference to unrelated prior or subsequent claims, suits or settlements, and their amount," and so Rhombus and Proskine were barred from raising any *res judicata* arguments. This argument is nonsensical. A motion *in limine* is a pretrial motion which serves to exclude evidence *during the trial* (*Griffin v. Prairie Dog Limited Partnership*, 2019 IL App (1st) 173070, ¶ 77), and thus, has no effect on a motion to dismiss raising an affirmative defense.

¶ 28    At the outset, we note that is unclear from the record as to whether the trial court dismissed Mo's complaint on the basis of *res judicata* or collateral estoppel (or both). On one hand, the court stated that its ruling was based on estoppel. On the other hand, the court stressed that Mo *could have* brought her current claims in the 2009 counterclaim, but did not, which is a principle of *res judicata*. See *Goodman v. Hanson*, 408 Ill. App. 3d 285, 30 (2011). Nonetheless, we can affirm on any basis in the record (*Hanna v. Creative Designers, Inc.*, 2016 IL App (1st) 143727, ¶ 33), and our review makes clear that Mo's amended complaint is barred by *res judicata*.

¶ 29    A motion to dismiss pursuant to section 2-619 of the Code admits the legal sufficiency of the pleadings, but asserts certain defects or defenses. *Duncan v. FedEx Office & Print Services, Inc.*, 2019 IL App (1st) 180857, ¶ 10. Rhombus and Proskine's motion to dismiss in this case was primarily based upon *res judicata*. *Res judicata* is an equitable doctrine designed to encourage judicial economy by preventing a multiplicity of lawsuits between the same parties where the facts and issues are the same. *Venturella v. Dreyfuss*, 2017 IL App (1st) 160565, ¶ 26. The doctrine protects parties from being forced to bear the unjust burden of relitigating essentially the same case. *Id. Res judicata* applies not only to claims that have been fully litigated in an earlier proceeding, but also to claims that *could have* been raised or decided, but were not. *Id.*, ¶ 27. The elements of *res judicata* are: (1) a final judgment on the merits; (2) an identity of parties or their privies; and (3) an identity of causes of action. *Id.* We review a trial court's order dismissing a complaint under section 2-619 *de novo*. *Duncan*, 2019 IL App (1st) 180857, ¶ 10.

¶ 30    Mo first argues that *res judicata* does not bar her instant action because there is not an identity of parties. In support of this argument, she claims that she brought the 2009 counterclaim as a "shareholder," while she brought the instant case as an "individual." This is a distinction without a difference. Mo filed both the 2009 counterclaim and the instant action in her own name.

Further, for purposes of *res judicata*, the parties do not have to be *identical*. *Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 318 (1995). In fact, the same-parties requirement is met where the litigants' interests are *sufficiently similar*, even where the litigants differ in name or number. *Id*. Clearly, Mo's interest in the two different actions is the same (*i.e.,* obtaining relief regarding her ownership interest in Rhombus). Under these facts, the persona in which she receives the relief sought, does not avoid the principle of *res judicata*. She would be the recipient of the increased amount of shares and the attendant financial gain.

¶ 31    Mo alternatively argues that there is no identity of parties because Proskine was not a party to the 2009 counterclaim. However, *res judicata* bars actions against parties who have been in privity with the parties from the previous action. *Agolf, LLC v. Village of Arlington Heights*, 409 Ill. App. 3d 211, 220 (2011). And Proskine, as a founder, a shareholder, and the president of Rhombus, certainly falls squarely within that principle. See *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 403 Ill. App. 3d 179, 191 (2010) (corporations and their officers, directors, and shareholders are in a category of relationships that may establish privity, for purposes of *res judicata*, especially in a closely held corporation where the stockholders are in complete control of the corporation, and in effect, in complete control of the litigation). As Rhombus points out, had Mo been successful in the 2009 counterclaim and obtained additional shares, it would have directly impacted Proskine and resulted in a dilution of his ownership. Thus, the same-parties requirement of *res judicata* is satisfied as to Proskine.

¶ 32    Mo next argues that there is no identity of causes of action, and therefore *res judicata* does not apply. Mo claims that her 2009 counterclaim was "a breach of fiduciary/shareholder derivative suit that sought declaratory relief," while the instant action is "an action at law on a contract." We are not persuaded by this argument. First, a derivative action is brought *on behalf of the*

*corporation*, for harm done to it for which the corporation either cannot assert or refuses to assert in its own right. *Caparos v. Morton*, 364 Ill. App. 3d 159, 167 (2006). Mo's 2009 counterclaim clearly was not brought on behalf of Rhombus and/or CEEIF; in fact, it was brought *against* Rhombus and CEEIF.

¶ 33     Additionally, Mo directs us to the transactional test, which determines whether there is an identity of causes of action for purposes of *res judicata*. However, contrary to Mo's argument, the transactional test supports a finding of *res judicata* under these facts: "Under the transactional analysis, separate claims will be considered the same cause of action for *res judicata* purposes if they arise from a single group of operative facts, regardless of whether different theories of relief are asserted." *Lane v. Kalcheim*, 394 Ill. App. 3d 324, 332 (2009). Therefore, although Mo frames one claim as a breach of fiduciary duty and the other as a breach of contract, both claims arise out of the *same* operative facts, *i.e.,* Rhombus' failure to provide Mo with a greater ownership interest and distribution of profits. It is the *substance* of a claim, not the title, that controls. Mo cannot take more than one bite out of the same apple and continue to repeat the same argument simply by reframing it. See *Hayes v. State Teacher Certification Board*, 359 Ill. App. 3d 1153, 1161 (2005).

¶ 34     Nonetheless, Mo continues to assert that the two actions do not arise out of the same operative facts, because her claim in the instant case arises out of the June Agreement, while the 2009 counterclaim was not based on the June Agreement. She asserts that the June Agreement was not attached to her complaint in the 2009 counterclaim and actually had little to do with the 2009 counterclaim. Yet, in her 2009 counterclaim, Mo specifically referenced the June Agreement as a basis for why she was entitled to additional shares. And when she appealed the judgment from the trial court's ruling on the 2009 counterclaim, her appellate brief before this court explicitly stated that she "thought the June Agreement would provide her with a greater ownership interest" in

Rhombus, and that she was "entitled to all that she was afforded in the June Agreement." Accordingly, we reject her assertion that the 2009 counterclaim did not involve the June Agreement.

¶ 35    In any event, both cases (and the theories advanced in support) amount to Mo's claim that she is entitled to a greater ownership interest in Rhombus. See *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490–91 (1993) ("[a]lthough a single group of operative facts may give rise to the assertion of more than one kind of relief or more than one theory of recovery, assertions of different kinds or theories of relief arising out of a single group of operative facts constitute but a single cause of action"). Moreover, even assuming *arguendo* that Mo did not base her 2009 counterclaim on the June Agreement, Mo *could have* raised the June Agreement as a basis for her claim for greater ownership, and *res judicata* bars all claims which either were raised or *could have* been raised in the prior proceeding. See *id.* ("*res judicata* extends not only to every matter that was actually determined in the prior suit but to every other matter that might have been raised and determined in it").

¶ 36    Further, it is immaterial that Mo previously sought declaratory relief and now seeks monetary damages. Relief is irrelevant for the purposes of *res judicata*. See *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 307 (1998) (the assertion of different kinds of relief still constitutes a single cause of action if a single group of operative facts gives rise to the assertion of relief). Thus, there is an identity of causes of action.

¶ 37    Finally, Mo argues that there was never a final judgment regarding the June Agreement because the trial court's judgment in the 2009 counterclaim only "casually mentioned" it, and therefore she may still bring her claim in the instant case based on the June Agreement. This is a specious agreement. As discussed, *res judicata* bars not only what was decided in the final

judgment in the prior action, but also whatever *could have* been decided. *Hasbun v. Resurrection Health Care Corp.*, 2015 IL App (1st) 140537, ¶ 26. Consequently, the final-judgment requirement is satisfied and *res judicata* bars Mo's amended complaint in the instant case.

¶ 38                                    CONCLUSION

¶ 39      For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 40      Affirmed.