GENERAL ELECTRIC CREDIT CORPORATION, Plaintiff-Appellant, v. RONALD JOVANI ALLEGRETTI, a/k/a Ronald Allegretti, Defendant-Appellee.

First District (1st Division)   No. 86—1944

Opinion filed September 28, 1987.

Blatt, Hasenmiller, Flanagan & Leibsker, of Chicago (Gary P. Flanagan, of counsel), for appellant.

Law Offices of Alan Kawitt, of Chicago, for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff General Electric Credit Corporation (GECC) appeals from the order of the trial court granting summary judgment to defendant Ronald Jovani Allegretti (Allegretti) and denying plaintiff's motion for summary judgment.

Allegretti had purchased a bedroom set valued at $900 and a television set valued at $350 from Goldblatt Brothers, Inc. (Goldblatt's), on a revolving credit account with Goldblatt's. Under the terms of the revolving credit agreement and the credit slip which was signed at the time of each purchase, Goldblatt's reserved a security interest in all goods sold on credit to Allegretti. Goldblatt's then assigned its interest in the executed credit agreement with Allegretti to plaintiff GECC. Allegretti filed a voluntary petition in bankruptcy on March 16, 1981, and was later discharged on his personal debts, including $1,483.29 listed as a debt owed Goldblatt's for exempt property.

After Allegretti refused to voluntarily relinquish possession of the bedroom set and television set he had purchased from Goldblatt's, GECC filed suit in the circuit court of Cook County seeking repossession of the goods or, in the alternative, recovery of its $1,250 value plus $250 attorney fees and costs which Allegretti had agreed to pay under the terms of his revolving credit account with Goldblatt's. Cross-motions for summary judgment were filed. Following a hearing at which arguments from both parties were heard, the trial judge granted the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment. GECC has appealed the trial court's ruling to this court on the grounds that the trial court erred in finding the property exempt. On appeal GECC contends, as it did in the trial court, that it has a nonpossessory purchase money security interest which was unaffected by Allegretti's discharge in bankruptcy.

The Federal Bankruptcy Code permits a debtor to declare his outstanding debts, stay creditor collection techniques, devise a schedule to pay those debts from his available assets, and to exempt certain business and personal property from attachment and sale as is necessary for the debtor to make a fresh start. (See H. R. Rep. No. 595, 95th Cong., 2d Sess. 126 (1978), reprinted in 1978 U.S. Code Cong. & Adm. News 5963, 6087; 11 U.S.C. sec. 522 (1982).) Additionally, the majority of States have enacted "opt-out" statutes which have attempted to preclude resident debtors from using the Federal bankruptcy exemptions and, instead, authorize exemptions as provided by the State statute. (See *In re Vaughn* (C.D. Ill. 1986), 67 Bankr. 140.) Under the Illinois statute in effect at the time Allegretti filed his bankruptcy petition, the State opt-out law would have permitted him to exempt his "equity interest, not to exceed $2,000 in value, in [personal] property" if such property was subject to a *nonpossessory nonpurchase money security interest.* (Emphasis

added.) (Ill. Rev. Stat. 1981, ch. 52, pars. 13(b), 101.)[1] The Illinois exemption statute followed the legislative scheme of the Federal Bankruptcy Code, which expressly authorizes State exemptions under the Bankruptcy Code only to the extent the claims are based on nonpurchase money security interests. The Federal statute provides in pertinent part:

> "(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section [applicable State law], if such lien is—
>
> \*\*\*
>
> (2) a nonpossessory, nonpurchase-money security interest in any—
>
> (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor \*\*\*." 11 U.S.C. sec. 522(f)(2)(A) (1982).

■ Thus, if Allegretti was correct in his assertion that GECC, contrary to GECC's contention, only had a nonpossessory nonpurchase money security interest, the trial court properly granted his motion for summary judgment. However, we believe such a conclusion is contrary to the evidence here, is inconsistent with the principles established by the relevant cases from other jurisdictions that have considered similar situations, and is inconsistent with the congressional intent reflected in the Bankruptcy Reform Act of 1978. Based upon our review of the record, we conclude that GECC did have a purchase money security interest in Allegretti's bedroom set and television that is not avoidable under section 522(f) of the Federal Bankruptcy Code. 11 U.S.C. sec. 522(f) (1982).

Under the Federal Bankruptcy Code the determination of whether a security interest is a purchase money security interest is based on State law because the Federal statute does not include a definition. (*In re Vaughn* (C.D. Ill. 1986), 67 Bankr. 140.) In Illinois, a purchase money security interest is automatically created when a security interest is "taken or retained by the seller of the collateral

---

[1]While not relevant to this appeal, the Illinois exemption statute in effect at the time Allegretti filed his bankruptcy petition was subsequently held invalid under the supremacy clause of the United States Constitution as not broad enough to provide debtors with all of the property that Congress deemed necessary for debtors to make a fresh start. See *In re Bagelmann* (N.D. Ill. 1982), 16 Bankr. 780.

to secure all or part of its price." (Ill. Rev. Stat. 1985, ch. 26, par. 9—107.) The seller is not required to file a financing statement to perfect a purchase money security interest in consumer goods. (Ill. Rev. Stat. 1985, ch. 26, par. 9—302(1)(d).) The Illinois law protecting purchase money security interests, like those statutes found in other jurisdictions, is based on the accepted commercial practices protecting such interests. As the Bankruptcy Court for the Northern District of Ohio observed in *In re Hill* (N.D. Ohio 1980), 4 Bankr. 310:

> "Purchase money security interests are protected by statute because of the strong connection between the lending of money by the creditor and the transfer of goods to the debtor. This connection does not exist in the nonpurchase money security interest situation where the creditor takes a security interest in all household goods the debtor already has rights in, to secure the payment of a loan." 4 Bankr. 310, 315.

■ Also, Congress did not intend that a petitioner in bankruptcy could "avoid security interests acquired by sellers of goods who take or retain a security interest in the goods sold." (*In re Cerasoli* (M.D. Penn. 1983), 27 Bankr. 51, 54.) The legislative history of the Bankruptcy Reform Act of 1978 evidences a congressional intent to grant exemptions to debtors only as against nonpurchase money security interests:

> "Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the form he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.
> ***
> ***
> The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of *nonpurchase money security interests* in household goods. Such security interests have too often been used by over-reaching creditors. The bill eliminates any unfair advantage creditors have." (Emphasis added.) (S. Rep. 989, H. R. Rep. 585, 95th Cong., 2nd Sess. 92 (1978), reprinted in 1978 U.S. Code Cong. &

Adm. News 5787, 6088.)

Contrary to Allegretti's assertions, it is only where the security interest, as stated above, is a general security in the household goods for the payment of all the debtor's obligations, *i.e.*, the goods are not the security for the payment of the purchase price itself but for all of the money the debtor owes, that the goods are exempt from creditor claims under the Bankruptcy Code.

The case which Allegretti cites to support his contention that GECC's lien here was unenforceable, *In re Van Gorkom* (D. S.D. 1980), 4 Bankr. 689, involved a nonpurchase money security interest. The parties in that case had in fact stipulated that the creditor's interest in the debtor's 1977 Sears freezer was a nonpurchase money security interest. Also, under the circumstances there, where the goods were already a household possession at the time the security interest attached, the court's holding that the debtors could avoid the creditor's lien was consistent with the intent of the Federal Bankruptcy Code.

The parties here, however, did not agree concerning the nature of the security interest of GECC; rather, this is the issue that must be determined in this appeal. Allegretti does not contest the fact that Goldblatt's created a nonpossessory purchase money security interest when it transferred possession of the goods to Allegretti subject to a retained security interest in those goods for the amount of the purchase price of the goods. (See *In re Anderson* (D. Neb. 1982), 23 Bankr. 130; *In re Orecchio* (D. N.J. 1985), 54 Bankr. 685. But *cf. In re Manuel* (5th Cir. 1975), 507 F.2d 990.) However, Allegretti argues that, although Goldblatt's had a purchase money security interest in his bedroom set and television, this protected interest was somehow extinguished when it was assigned to GECC. Allegretti does not point to any authority, and we do not know of any authority to support this contention. Also, while no Illinois court has addressed this issue, there is persuasive authority from other jurisdictions.

The Bankruptcy Court for the Middle District of Florida in *In re Keller* (M.D. Fla. 1983), 29 Bankr. 91, decided a case like that presented here. There, the debtors had purchased a sofa, loveseat, chair and bedroom set under a revolving charge account which granted a security interest to Unclaimed Freight, which then assigned its contract rights to Household Finance Retail Services, Inc. The court there ruled:

> "[T]he assignment of the installment contract from Unclaimed Freight to Household Finance did not destroy the purchase

money character of the original security interest and it remained a purchase money security interest in spite of the assignment. \*\*\* [T]his Court recognizes that the Defendant [Household Finance] has a valid purchase money security interest in whatever items of the Debtor's furniture [are] not yet paid for under the terms of the contract." *In re Keller* (M.D. Fla. 1983), 29 Bankr. 91, 93.

Accord *In re Schwartz* (S.D. Ohio 1982), 27 Bankr. 195.

Similar reasoning is found in the bankruptcy case of *In re Slay* (E.D. Tenn. 1980), 8 Bankr. 355, where the petitioners, David and Elizabeth Slay, had used the proceeds from a loan to purchase household appliances and furniture for their personal use. The creditor then consolidated the first loan into a second loan which was secured in part by the retention of a security interest in the same household property which was purchased with the first loan. Noting that the Bankruptcy Code does not define purchase money or non-purchase money, the court looked to the law of the forum, which was Tennessee, to determine the nature of the creditor's interest in the Slay's household appliances and furniture. Using the relevant Tennessee statute defining a purchase money security interest (which is identical to section 9—107 of the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 9—107)), the court concluded:

"The essence of a purchase money security interest is that the collateral acquired secures payment of its purchase price. If it secures payment of some other debt, then to that extent it is not purchase money." (*In re Slay* (E.D. Tenn. 1980), 8 Bankr. 355, 357.)

The court ruled that because no payments were made on the consolidated loan, the amount of the purchase money debt was easily determined as the amount the Slays owed on the first debt at the time of consolidation. Thus, the court held that the creditor had a secured claim for the value of the purchase money collateral that could not be avoided. 8 Bankr. 355, 358.

The same result was also reached by the United States Bankruptcy Court for the Western District of Kentucky in two cases which also involved the enforceability of creditor liens on consumer goods after bankruptcy petitions were filed. These cases were *In re Littlejohn* (W.D. Ky. 1982), 20 Bankr. 695, and a companion case, *In re Smallwood* (W.D. Ky. 1982), 20 Bankr. 699. In the first case, *In re Littlejohn*, the Littlejohns had purchased furniture under a retail installment contract with Smith Appliance and Furniture Company, Inc., for certain furniture valued at $1,497.10. The Littlejohns'

credit contract was later assigned to Credithrift and the parties executed a renewal note and financing statement listing the same items of furniture as were purchased from Smith Furniture. After the Littlejohns filed a bankruptcy petition, Credithrift sought to lift the bankruptcy stay to enforce its lien against the collateral in the Littlejohn's possession. The Littlejohns sought to avoid the creditor's lien as exempt household furniture pursuant to section 552(f) of the Bankruptcy Code. While the court agreed with the Littlejohns that Credithrift did not obtain a purchase money security in its own right when it acquired an interest merely as security for a preexisting claim belonging to the seller Smith Furniture, the court did find, however, that Credithrift acquired a purchase money security interest as an assignee of the retail installment contract itself. (20 Bankr. 695, 696.) The court thus held that the Littlejohns could not avoid the valid purchase money security interest in household goods owned by Credithrift.

In the companion case, *In re Smallwood* (W.D. Ky. 1982), 20 Bankr. 699, the Smallwoods had purchased a washer and dryer from Star Television and executed a security agreement and financing statement which was later assigned to Kentucky Finance Company. The Smallwoods then sought to avoid the obligation to Kentucky Finance Company, also claiming that the assignment negated the purchase money character of the interest. The court held that the reasoning of *In re Littlejohn* applied and that the assignee creditor was the holder of a valid non-avoidable purchase money security interest. *In re Smallwood* (W.D. Ky. 1982), 20 Bankr. 699.

■ Allegretti's claim that the purchase money nature of the security interest that Goldblatt's retained in his household goods was somehow extinguished when his account was assigned to GECC is identical to the arguments that were rejected in the preceding cases. Accordingly, we find his claim that the assignment of his debt "transformed" and destroyed its purchase money characteristic is without foundation and contrary to the relevant cases from our sister jurisdictions, and, thus, we too reject this argument. We further note that a security interest is generally recognized as incidental to and passing with the title to property. This effect has been explained in *American Jurisprudence*, a treatise on assignments:

> "The assignment of a debt ordinarily carries with it all liens and every remedy or security that is incidental to the subject matter of the assignment and that could have been used, or made available, by the assignor as a means of indemnity or payment, even though they are not specifically named in the

instrument of assignment, and even though the assignee at the time was ignorant of their existence. Such rights will pass notwithstanding the assignment is not by any instrument in writing, or that the assignor retains possession of the collateral, his possession being considered in the nature of a trust for the benefit of the assignee of the debt." 6 Am. Jur. 2d *Assignments* sec. 121 (1964).

See also *In re Country Programmers International, Inc.* (D. Vt. 1982), 33 U.C.C. Rep. Serv. 744.

After reviewing applicable State and Federal law, and the rulings of other jurisdictions that have considered similar situations, we find that GECC was an assignee of a seller with a perfected purchase money security interest, that it had a purchase money security interest in Allegretti's goods, and that this interest could not be avoided under section 522(f) of the Bankruptcy Code. Hence, we hold that GECC was entitled to enforce its lien in State court.

Thus, for all of the above reasons, we reverse the judgment of the circuit court of Cook County granting Allegretti summary judgment and remand the case for the entry of an order granting GECC's motion for summary judgment plus reasonable attorney fees and costs as stipulated in Allegretti's contract.

Judgment reversed and remanded with directions.

CAMPBELL and MANNING, JJ., concur.