In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 02-1470 & 02-1471

KIM SCHMITT, GERARD SMETANA,
CBC BRICKS, INC., and DENNIS TAHENY,

*Plaintiffs-Appellants*,

*v.*

SANDRA SCHMITT,

*Defendant-Appellee.*

---

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 4028—**Marvin E. Aspen**, *Judge.*

---

ARGUED DECEMBER 3, 2002—DECIDED MARCH 25, 2003

---

Before EASTERBROOK, MANION, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* This case arises out of the nasty divorce of Kim Schmitt and his soon-to-be ex-wife, Sandra Schmitt. Although the details of the marriage are neither known to us nor relevant to our case, we can't help but wonder if this isn't the first venomous and frivolous argument between the two.

The case comes to us after, as Judge Aspen in the district court accurately noted, a "tortured procedural history." In February 2000, Mrs. Schmitt filed for divorce in

Illinois state court. Unable personally to serve process upon her husband, Mrs. Schmitt moved under 735 Ill. Comp. Stat. Ann. 5/2-202 for service of process by special order of the court. After the motion was granted in July, Mrs. Schmitt used a private detective to serve process upon three parties approved by the court: an employee of Mr. Schmitt's company, CBC Bricks, Inc., and a law firm and an attorney who had previously represented Mr. Schmitt in an unrelated matter.

That August, Mr. Schmitt responded with a motion contesting service of process, claiming a violation of his due process rights. The court denied that motion and ordered Mr. Schmitt to pay his wife for maintenance, landscaping, travel, and attorneys' fees. The court also enjoined Mr. Schmitt and some of his business entities, including CBC Bricks, from disposing of assets without notice to Mrs. Schmitt and her attorneys.

Mr. Schmitt then filed an interlocutory appeal to the Illinois Appellate Court, claiming, again, that the trial court's orders were void because the method of service of process violated his due process rights. In April 2001, the appellate court ruled against Mr. Schmitt, then denied his petition for rehearing and refused his request to stay the case in the trial court.

In May 2001, already 15 months after Mrs. Schmitt filed for divorce, Mr. Schmitt filed a federal claim under 42 U.S.C. § 1983, arguing that the Illinois state courts infringed upon his due process rights. The district court granted Mrs. Schmitt's motion to dismiss for lack of subject-matter jurisdiction, finding support for its decision in both the substantiality doctrine and the *Rooker-Feldman* doctrine. The district court also ordered Mr. Schmitt, CBC Bricks, and his attorneys to show cause why they did not deserve to have Rule 11 sanctions imposed on them. After denying their motion for reconsideration, the district

court sanctioned Mr. Schmitt and his attorneys under Rule 11. The court also ordered Mr. Schmitt and CBC to pay Mrs. Schmitt's attorneys' fees and costs. Mr. Schmitt, his attorneys, and CBC Bricks appeal, asking us to reverse both the district court's dismissal of their suit and the decision to impose sanctions.

Although the district court offered both the substantiality doctrine and the *Rooker-Feldman* doctrine to support the dismissal, we need choose only one on which to affirm. And since this case goes to the heart of the *Rooker-Feldman* doctrine, *see Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509 (7th Cir. 1996) ("At its core, the doctrine is a recognition of the principle that the inferior federal courts generally do not have the power to exercise appellate review over state court decisions."), that's the route we'll take. In *Rooker v. Fidelity Trust Co*, the Supreme Court held:

> If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original.

263 U.S. 413, 415-16 (1923) (citations omitted). We have interpreted *Rooker-Feldman* to ask "whether the federal plaintiff seeks to set aside a state court judgment or

whether he is, in fact, presenting an independent claim. Put another way, if the injury which the federal plaintiff alleges resulted from the state court judgment itself, then *Rooker-Feldman* controls, and the lower federal courts lack jurisdiction over the claim. It does not matter that the state court judgment might be erroneous or even unconstitutional." *Kamilewicz*, 92 F.3d at 510 (citations omitted). Our cases reflect *Rooker's* basic principle that once a case is litigated in state court, a federal district court does not have jurisdiction to review it. *See Garry v. Geils*, 82 F.3d 1362, 1366 (7th Cir. 1996) ("Thus *Rooker* and *Feldman* both proclaimed that if a federal plaintiff claims injury at the hands of a state court, due to its decision in a civil case, federal district courts have no jurisdiction to hear the case; and the only appeal is to the Supreme Court after a final judgment by the highest state court."); *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) (Appellant "may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." (quoting *Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir. 1984), *cert. denied*, 474 U.S. 968 (1985))).

Mr. Schmitt argues that we have jurisdiction under several exceptions to *Rooker-Feldman*. First, he claims the doctrine does not apply when only state court interlocutory decisions are at stake. While some courts have recognized limited interlocutory order exceptions, *see, e.g.*, *In re Meyerland Co.*, 960 F.2d 512, 516 (5th Cir. 1992), we have twice decided to pass on the question. *See Hoover v. Wagner*, 47 F.3d 845, 849 (7th Cir. 1995) ("The application of the doctrine to *interlocutory* decisions of state courts . . . is an open question."), and *Owens-Corning Fiberglass Corp. v. Moran*, 959 F.2d 634, 635 (7th Cir. 1992) ("Whether the *Rooker-Feldman* doctrine applies to interlocutory decisions is an interesting question.").

But a closer look at those cases shows why an exception might have been appropriate. Several mitigating factors existed in *Owens-Corning*:

> Owens-Corning attempts to skirt the *Rooker-Feldman* doctrine not only by observing that Judge Moran's decision [Judge Moran was the state court judge whose decision was being attacked in the federal court proceeding] is interlocutory but also by trumpeting that it began this case before he could impose any sanction— thereby making it clear, Owens-Corning insists, that its objection is to Rule 237(b) in the abstract, and not its application to a particular case. Four Justices concluded in *Pennzoil* that such a maneuver avoids the *Rooker-Feldman* doctrine.

*Owens-Corning*, 959 F.2d at 635. Similarly, in *Hoover*, the plaintiffs were not parties in the accompanying state court action, "so it is a little hard to describe what they are doing as circumventing the prescribed mode of appellate review." *Hoover*, 47 F.3d at 849.

Here, on the other hand, circumventing the prescribed mode of appellate review is virtually the only way to describe what Mr. Schmitt is doing. He had an opportunity to present his case in the state court (Mr. Schmitt and CBC claim they were not parties to the original suit, but Mr. Schmitt was named in the original divorce action, and CBC was served with process and given an opportunity to participate in the divorce proceedings), and a state court is perfectly capable of answering questions of jurisdiction and service of process. *See Garry*, 82 F.3d at 1369 n.13 ("Under the principles of comity and federalism, we cannot and will not assume that the plaintiffs' constitutional claims would be treated any differently by the courts of Illinois than by a federal court."). Having been rebuffed by trial and appellate courts in Illinois, the prescribed mode of appellate review was clear: Mr. Schmitt

should have appealed to the state's supreme court, after which, if he lost, he would have been free to appeal to the United States Supreme Court. *See Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1996) ("[L]itigants who feel a state proceeding has violated their constitutional rights must appeal that decision through their state courts and thence to the Supreme Court."). Instead, filing suit with the district court was the type of end run around an adverse state court ruling that we have explicitly rejected. *See Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 825 (7th Cir. 1999).

Mr. Schmitt also argues that a rarely invoked "void *ab initio*" exception to the *Rooker-Feldman* doctrine applies here. According to Mr. Schmitt, the faulty service of process meant that the state courts never had jurisdiction over him. Federal courts exercising bankruptcy jurisdiction have occasionally reviewed state court judgments where the state court lacked personal or subject matter jurisdiction. *See*, *e.g.*, *In re James*, 940 F.2d 46, 52 (3d Cir. 1991). *But see In re Ferren*, 203 F.3d 559, 560 (8th Cir. 2000) (declining to create exception). We have acknowledged the Third Circuit's exception, but we have not endorsed it. *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 528 n.6 (7th Cir. 2000).

While a void *ab initio Rooker-Feldman* exception might be appropriate in some bankruptcy cases (apparently the only situation in which it has been applied) in order to protect the dominant federal role in that specialized area of the law, it has no place here. As we have said, the Illinois state courts were competent to determine their own jurisdictional boundaries, so there is no need for the federal courts to intervene. If a state court had violated constitutional jurisdictional limits, Mr. Schmitt could have brought that up with the Supreme Court after exhausting his state court remedies.

In sum, Mr. Schmitt has brought the precise sort of claim *Rooker-Feldman* eliminates. And that is so clear that, in addition to AFFIRMING the district court's judgment, we declare this appeal to be frivolous, and we direct the plaintiffs to show cause within 14 days why they should not be sanctioned under our Rule 38.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
