**In re Evelyn WATKINS, Debtor.**

**No. 03 B 21660.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 22, 2003.

Mindy D. Smith, Alan S. Farnell, Oak Brook, IL, for Movant, GMAC.

Neal Gainsberg, Chicago, IL, for Debtor and for Staver & Gainsberg, P.C.

Richard Mason, trustee.

## MEMORANDUM OPINION

JACQUELINE P. COX, Bankruptcy Judge.

### Background and Procedural History

Evelyn Watkins, a chapter 7 debtor since May 15, 2003, purchased a 1999 Chevrolet Malibu (the "Malibu") on August 31, 1999, only to have this vehicle stolen and totaled five months later. GMAC, the lender who financed her purchase of the car and retained a purchase-money security interest in it, had required Watkins to contractually agree to purchase physical-damage insurance, which she obtained in September 1999 from National Heritage Insurance Company ("National"). The policy listed both Watkins and GMAC as a loss payees, and GMAC could use any proceeds therefrom, which were also encumbered with GMAC's perfected security interest under the security agreement, to reduce Watkins' car debt in the event of loss or damage.

After the destruction of the Malibu, National, however, did not immediately agree to reimburse Watkins for the damage. Rather, Watkins hired attorney Jared Staver to recover damages from National under a contingency-fee agreement whereby Staver would receive a percentage of any total recovery. To secure this percentage, Staver claimed a statutory attorney's lien on the insurance proceeds by sending the requisite notice to National informing it of the lien on April 5, 2001. Staver was eventually able to negotiate a settlement of $11,437.35, representing the value of the vehicle at the time of the loss

less the deductible, payable jointly to Staver, Watkins, and GMAC. In accordance with Illinois law, National also requested the title to the Malibu in order to obtain the salvage rights.

After excluding from the settlement amount his attorneys' fees, Staver offered the remaining $7,620.95 to GMAC and requested a release of its lien on the totaled car so that the title could be transferred free and clear to National for salvage. GMAC believed it was entitled to the full $11,437.35 and would neither endorse the settlement check from National nor release the lien on the Malibu. Its actions prompted Watkins to file a three-count suit against it in the Circuit Court of Cook County. Count I requested a declaratory judgment adjudicating the priority of Staver's attorney's lien over GMAC's security interest in the insurance proceeds. Count II alleged that GMAC had breached the retail installment contract by refusing to accept the payment of the $7,620.95 that Staver had offered on behalf of Watkins. County III alleged that because Watkins' attorney Staver had "created" the insurance proceeds in which GMAC also had an interest, Watkins was entitled to reimbursement of litigation expenses from such proceeds under the "common fund doctrine."

The parties filed cross motions for summary judgment on all three counts, with the state court ruling in favor of GMAC on all six motions on October 9, 2001. The Appellate Court of Illinois affirmed the judgment in favor of GMAC, adopting the reasoning of the state trial court in all respects except one: it declined to reach the issue of whether Staver's lien ever attached to the insurance proceeds at all, instead finding the superiority of GMAC's perfected security interest to be a sufficient basis for the Count I judgment.

After prevailing in this lawsuit, GMAC asserted that its superior perfected security interest in the insurance proceeds engulfed the entire $11.437.35, as Watkins had an outstanding balance due under the installment retail contract of $8,612.51 and allegedly owed attorneys' fees related to collection costs totaling $14,846.51—a sum well beyond the amount of the insurance proceeds. After Watkins filed the bankruptcy petition now before this Court, GMAC filed a motion requesting relief from the automatic stay in order to pursue its state-law rights and remedies with respect to the Malibu. Additionally, pursuant to Bankruptcy Rule 9013 it requested an order directing National to pay the full $11,437.35 in proceeds to GMAC in order to fulfill the state-court judgment denying declaratory relief in favor of Watkins.

In addition to responding with the arguments discussed below, Watkins has affirmatively requested (1) an equitable lien on the proceeds securing Staver's attorneys' fees related to the settlement negotiations with National and (2) an exclusion of $1,950 for the benefit of Watkins under the wildcard provision in the Illinois personal property exemption statute.

### Discussion and Conclusions of Law

#### A. Motion to Modify the Automatic Stay

■ Watkins does not oppose this portion of GMAC's motion because the vehicle is now worthless. The ground for relief alleged in the motion is also sufficient under 11 U.S.C. § 362(d)(2). That is, Watkins is not currently in a reorganization chapter of bankruptcy, and she has no equity in a totaled vehicle for which she still owes $8,612.51. Whatever salvage value the Malibu may still have is GMAC's, because it has an unreleased, first-priority security interest in the collateral.

## B. Motion to Issue Order Directing National to Pay Insurance Proceeds

 Whenever a debtor has more than a minimal equitable interest in a piece of property, such property in its entirety becomes property of the bankruptcy estate under § 541(a) even if it is also subject to the interests of others. *In re Bennett*, 133 B.R. 374, 380 (Bankr.N.D.Tex.1991); *In re Leff*, 88 B.R. 105, 107–08 (Bankr.N.D.Tex. 1988), *affirmed sub nom. Stewart v. Law Offices of Dennis Olson*, 93 B.R. 91 (N.D.Tex.1988), *affirmed by* 878 F.2d 1432 (5th Cir.1989) (concluding that Supreme Court decision *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), implicitly rejected argument that only a debtor's limited interest in property, as opposed to the property as a whole, became property of the bankruptcy estate). Estate property is then subject to being administered under the Bankruptcy Code through the Court's jurisdiction under 28 U.S.C. § 1334(e). Here, Watkins has an interest in the insurance proceeds because she would be entitled to at least a portion of them if she paid in full her debt to GMAC, thereby extinguishing its security interest. The $11,437.35 is thus property subject to administration as part of the bankruptcy estate under this Court's authority.

### 1. Watkins' Attorney's Right to an Equitable Lien

Watkins argues that the attorneys' fees resulting from her attempt to collect insurance proceeds from National should be paid out of the proceeds (rather than from her other assets) because her attorney, Mr. Staver, is entitled to a superior equitable lien on them as a result of their contingency-fee agreement. GMAC responds by asserting the defense of *res judicata*. The Court agrees with GMAC's assertion.

 Congress has mandated that "judicial proceedings [of any State] ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Because of this Full Faith and Credit Statute,[1] this Court must afford the Circuit Court of Cook County judgment in favor of GMAC the same preclusive effect that Illinois courts would afford it. *See Long v. Shorebank Development Corp.*, 182 F.3d 548, 560 (7th Cir.1999). Under Illinois law, a prior suit has a *res judicata* effect on a claim in a subsequent suit when (1) a court of competent jurisdiction in the prior suit issues a final judgment on the merits; (2) the causes of action, defined by the group of operative facts giving a party a legal right to relief, *see Torcasso v. Standard Outdoor Sales*, 157 Ill.2d 484, 193 Ill.Dec. 192, 626 N.E.2d 225, 228 (1993), are identical; (3) the relevant parties, or those in privity with them, are identical in the two suits; and (4) the cause of action in the prior suit and all theories thereof either were actually litigated or could have been raised and decided in such suit. *See Robinson v. Toyota Motor Credit Corp.*, 315 Ill.App.3d 1086, 249 Ill.Dec. 120, 735 N.E.2d 724, 731 (2000), *affirmed in part and reversed in part by* 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951 (2002); *Philips Electronics, N.V. v. New Hampshire Insurance Co.*, 312 Ill.App.3d 1070, 245 Ill.Dec. 574, 728 N.E.2d 656, 664–66 (2000). *Res judicata* is broader than collateral estoppel (issue preclusion) in that it bars a party from asserting remedies and legal theories that

---

1. "Section 1738 imposes on the federal courts the same full faith and credit requirements imposed on the state courts by the U.S. Const. art. IV, § 1." *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1020 n. 2 (5th Cir. Unit B 1982).

potentially could have been adjudicated as part of a given nucleus of operative facts, not just remedies and legal theories that were actually litigated during the course of the prior preclusive suit. *Stathis v. First Arlington Nat'l Bank,* 226 Ill.App.3d 47, 168 Ill.Dec. 225, 589 N.E.2d 625, 630–630 (1992); *cf. Torcasso v. Standard Outdoor Sales,* 157 Ill.2d 484, 193 Ill.Dec. 192, 626 N.E.2d 225, 228 (1993); *Fayyumi v. City of Hickory Hills,* 18 F.Supp.2d 909, 918 (N.D.Ill.1998).

■ Here, the Chancery Division of the Circuit Court of Cook County, a court with original and general jurisdiction over contract and property disputes, issued a judgment on the merits binding the same two parties presently before this Court. The causes of action in this prior civil suit and the present contested matter both involve the parties' respective rights to insurance proceeds stemming from the August 1999 retail installment contract and security agreement, the contingency-fee agreement between Watkins and Staver, and GMAC's refusal to endorse National's settlement check and receive only the portion remaining after Staver deducted his legal fees. The equitable lien that Watkins now asserts in favor of Staver is simply an alternative remedy and theory of recovery that could and should have been presented and litigated in conjunction with her original state-court lawsuit. As such, this Court cannot consider the merits of the equitable-lien argument that Watkins makes in response to GMAC's motion.

■ Alternatively, the Court lacks subject-matter jurisdiction to consider this argument according to the *Rooker–Feldman* doctrine. Under the *Rooker–Feldman* doctrine, federal courts do not have subject-matter jurisdiction to review and potentially reverse any rulings issued by either lower or higher state courts, even if they misconstrue federal law. *See Brown*

*& Root v. Breckenridge,* 211 F.3d 194, 198, 199 (4th Cir.2000); *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir.1996); *Texaco v. Pennzoil Co.,* 784 F.2d 1133, 1142 (2d Cir.1986), *rev'd on other grounds,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Schmitt v. Schmitt,* 165 F.Supp.2d 789, 794 (N.D.Ill. 2001), *affirmed,* 324 F.3d 484 (7th Cir. 2003). Furthermore, they do not have the authority to act as *de facto* appellate courts *vis-a-vis* state courts unless expressly authorized by statute (such as the federal *habeas corpus* statute). *Reitnauer v. Texas Exotic Feline Found. (In re Reitnauer),* 152 F.3d 341, 343–44 (5th Cir. 1998). A federal court acts beyond the scope of authority if the merits of the federal controversy are inextricably tied to the state-court judgment, but it does not do so if the federal litigant presents an independent claim that, if meritorious, would not effectively nullify the state-court judgment or that would have been impossible to raise in the state-court proceeding. *See Schmitt v. Schmitt,* 324 F.3d 484, 486–87 (7th Cir.2003); *Remer v. Burlington Area Sch. Dist.,* 205 F.3d 990, 996 (7th Cir.2000); *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554–57 (7th Cir.1999); *Centres v. Town of Brookfield,* 148 F.3d 699, 702 (7th Cir.1998); *Breckenridge,* 211 F.3d at 198, 200–01; *Harris v. N.Y. State Dep't of Health,* 202 F.Supp.2d 143, 162–63 (S.D.N.Y.2002). Courts in the Seventh Circuit apply this test by looking to see whether the federal claimant's injury was "only complete" once the state court issued a judgment upholding his opponent's conduct or legal rights, and they find themselves without jurisdiction if the injury was "only complete" at that time. *Fayyumi v. City of Hickory Hills,* 18 F.Supp.2d 909, 914–17 (N.D.Ill.1998).

■ In this case, the argument in favor of granting Staver an equitable lien, there-

by relieving Watkins of liability for the percentage of the amount successfully recovered from National, is in essence the same argument made in favor of the "common fund" theory presented in Count III of the original complaint, just in different wrapping. This Court cannot grant the equitable lien without re-ordering (and nullifying) the priority that the state court gave GMAC's lien in Count I. Moreover, Watkins' (and Staver's) injury from GMAC's refusal to accept her settlement offer was "only complete" when the state court approved of GMAC's decision on the basis of its priority under U.C.C. Article 9.

### 2. The Extent of GMAC's Lien on Insurance Proceeds Securing Attorneys' Fees

Watkins argues GMAC's priority security interest in the $11,437.35 should be limited to the outstanding balance of the purchase price for the Malibu: $8,612.51. According to Watkins, the additional $14,846.51 that GMAC incurred as attorneys' fees were not "collection costs" entitled to the same lien priority as the purchase price; rather, they are the result of its failure to recognize Staver's lien. Watkins further supports this argument by pointing out that GMAC did not claim attorneys' fees in the state-court proceeding and allegedly has never filed a suit against Watkins to obtain attorneys' fees related to collection costs.

■ To the extent that her argument is an attempt to do an end run around the state-court judgment with respect to $2824.84 of the $11,437.35, it must fail as an attempt to re-adjudicate the priority of the two liens in contravention of both *res judicata* and the *Rooker–Feldman* doctrine. The judgment for GMAC on Counts I and III of the original complaint definite-

ly gave GMAC's security interest priority, and according to the retail installment contract, this security interest in physical-damage insurance proceeds "also secures [Watkins'] other agreements in this contract," not just the purchase price. These "other agreements" included *inter alia* the following paragraph: "If the Creditor hires an attorney to collect what you owe, you will pay the attorney's reasonable fee. If a judgment is entered against you, you will pay any court costs the court awards the Creditor." Furthermore, GMAC's superior security interest includes a part securing collection costs such as attorneys' fees. Under *res judicata*, the argument that only the purchase-price portion of GMAC's perfected security interest took priority over Staver's lien was a legal theory that *could have been* presented to the state chancery court; therefore, Watkins' failure to address it now bars this Court from considering the same.

■ Nevertheless, to the extent that her argument raises a new factual issue concerning the extent to which GMAC is entitled to reasonable attorneys' fees under the contract, the argument raises a new matter that was not previously adjudicated and, more importantly, was not ripe for litigation. As the defendant in the state-court lawsuit, GMAC had no duty to immediately seek an affirmative recovery of attorneys' fees relating to its collection costs for Watkins' Malibu. Unlike federal law, Illinois law is merely permissive regarding counterclaims arising out of the same core of operative facts as the primary lawsuit against the defendant; it does not create a compulsory counterclaim rule whereby the defendant must simultaneously bring any related claims or be barred by *res judicata* from ever asserting them.[2] *See* 735 Ill. Comp. Stat. Ann. 5/2–

---

**2.** Even if Illinois were a compulsory-counter-

claim jurisdiction, GMAC's subsequent claim

608 (West 1992); *Cox v. Doctor's Associates*, 245 Ill.App.3d 186, 184 Ill.Dec. 714, 613 N.E.2d 1306, 1315 (1993); *YMCA of Warren County v. Midland Architects*, 174 Ill.App.3d 966, 124 Ill.Dec. 468, 529 N.E.2d 288, 291–92 (1988). GMAC was simply defending an attack against the asserted priority of its lien on insurance proceeds as well as its position that it had not breached the contract.

Moreover, a counterclaim brought to collect both the purchase price plus attorneys' fees may have been premature at that time. By continuously defending its position throughout all stages of the state-court litigation, GMAC was incurring costs to collect the debt on an ongoing basis. Not until such effort was complete did it make sense for GMAC to tally and pursue its costs for defending its property interest, because not until the end of the litigation would it know whether its own lien securing attorneys' fees or Staver's had priority. GMAC's affirmative demand for a determination of its contractual entitlement to attorneys' fees is first now ripe for decision. Although Watkins claims that GMAC has never pursued a cause of action against her for attorneys' fees, its present motion for an order directing National to

pay GMAC the full amount of insurance proceeds, *see* Fed. R. Bankr.Pro. 9013, which became a "contested matter," *see* Fed. R. Bankr.Pro. 9014, is sufficient to accomplish the same. GMAC will be given the opportunity to establish its entitlement to attorneys' fees as a factual matter.

Finally, Watkins' contends that the attorneys' fees GMAC incurred in defense of the state–court lawsuit were not "collection" costs because GMAC incurred them after it refused her settlement offer of $7,620.95; had it accepted the offer, Watkins' lawsuit would not have ensued and the defense costs would not have accumulated. The Court is reluctant to draw a distinction between attorneys' fees incurred to affirmatively collect a debt and those incurred to defend the priority of the lien securing the debt, as both will ultimately and substantially impact GMAC's collection efforts. That is, by not defending the priority and extent of its lien on collateral, a secured creditor becomes an unsecured creditor to a greater degree and potentially increases the price and complexity of future collection efforts, which must thereafter include resort to the general body of assets the debtor may (or may not) have.[3] If GMAC believed that it was

---

for attorneys' fees would not necessarily be barred as result of Watkins' breach-of-contract claim (Count II) in the original lawsuit, because the former did not necessarily arise out of the same nucleus of operative facts as the latter. The Illinois Supreme Court has recognized that even when two independent lawsuits are based on the same commission brokerage agreement for the same billboard, they do not necessarily present identical causes of action, because defining the core of operative facts as simply "the performance of the brokerage agreement" is too narrow. *Torcasso v. Standard Outdoor Sales*, 157 Ill.2d 484, 193 Ill.Dec. 192, 626 N.E.2d 225, 228–30 (1993). Instead, where a former defendant subsequently files another suit alleging that different acts or omissions by the former prevailing plaintiff resulted in the breach of dif-

ferent contractual obligations at different times (as well as in fraudulent misrepresentation), the subsequent cause of action is not barred by the first. *See id.* Here, Watkins' contractual liability for attorneys' fees is the result of the collection costs incurred by GMAC to collect the delinquent amount due under the retail installment contract and to defend the security interest she granted and then attacked. GMAC's alleged contractual liability in the state-court litigation, on the other hand, supposedly stemmed from GMAC's wrongful refusal to accept Watkins' offer to prepay $7,620.95 of her debt out of the insurance proceeds. Thus, different obligations of the parties were supposedly breached by different acts at different times.

**3.** Or, as in this case, the debtor may file a chapter 7 bankruptcy case, making the ulti-

legally entitled to first priority in insurance proceeds in spite of a statutory attorney's lien (as was in fact the situation), it had no duty to accept $7,620.95 if the same would thereby extinguish its legal right to any remainder of the $11,437.35 to which it was entitled. Because the unpaid purchase-price balance on the Malibu is $8,612.51, not $7,620.95, the attorneys' fees GMAC incurred to defend its purchase-money security interest were nevertheless still in pursuit of collecting part of the original purchase price. The contract clearly secured both this purchase price as well as the legal costs it necessarily had to incur to collect the *full amount* of the unpaid balance.

In conclusion, GMAC is entitled to insurance proceeds securing the attorneys' fees incurred after it rejected Watkins' and Staver's settlement offer of $7,620.95. In the accompanying order, GMAC will be given the opportunity to present an itemization of legal fees showing that it has in fact incurred reasonable collection costs totaling at least $2824.84 ($11,437.35 minus $8,612.51), and Watkins will then have an opportunity to challenge the amount if appropriate.

### 3. Watkins' Entitlement to an Illinois Wildcard Exemption of $1,950

Watkin finally argues that because the insurance proceeds constitute her own personal property interest, she is entitled to $1,950 of the $11,437.35 under the Illinois wildcard exemption provision, which provides in relevant part, "The following personal property, owned by the debtor, is exempt from judgment, attachment, or distress for rent: ... (b) the debtor's equity interest, not to exceed $2,000 in value, in any other property." 735 Ill. Comp. Stat. Ann. 5/12–1001(b) (West 2003).

In spite of the applicability of *res judicata* and the *Rooker–Feldman* doctrine to other issues, the Court may address the merits of this argument because it raises the issue of the chapter 7 debtor's right under the U.S. Bankruptcy Code to claim exemptions and to use the avoidance provision for liens impairing exemptions, *see* 11 U.S.C. § 522 (West 2003); 735 Ill. Comp. Stat. Ann. 5/12–1001(b) (West 2003), and these § 522 issues could not have been litigated until Watkins sought protection under the Code. *See, e.g., Webster v. Hope (In re Hope)*, 231 B.R. 403, 421 (Bankr.D.D.C.1999) (preference claim could not be litigated until a bankruptcy case existed); *cf. Long v. Shorebank Development Corp.*, 182 F.3d 548, 559–60 (7th Cir.1999) (money-damages claim could not have been adjudicated as part of an Illinois forcible entry and detainer action to obtain possession of property).

Watkins' argument is nonetheless without legal merit. It is true that Illinois has opted out of the federal exemption scheme, *see* 11 U.S.C. § 522(b)(1), 735 Ill. Comp. Stat. Ann. 5/12–1201, making the Illinois wildcard exemption applicable to any equity interest in personal property she might have. But according to Illinois law, the exemption scheme may only be used to overcome liens created by judgments, attachments, or distress for rent, not to overcome security interests created by Article 9 of the Uniform Commercial Code. *Medaris v. Commercial Bank of Champaign*, 146 Ill.App.3d 1014, 100 Ill. Dec. 655, 497 N.E.2d 833, 834–35 (1986), *aff'd on other grounds*, 118 Ill.2d 443, 113 Ill.Dec. 911, 515 N.E.2d 1218 (1987); *see also In re Brennan*, 208 B.R. 448, 451 (Bankr.S.D.Ill.1997); *In re Jennings*, 107 B.R. 165, 166 (Bankr.S.D.Ill.1989). Federal courts examining the exemption laws of other states have also found that a debtor in bankruptcy who granted consensual

mate recovery of either the purchase price or

the legal fees a virtual impossibility.

liens (security interests and mortgages) generally cannot overcome them using the state-law exemption scheme alone; rather, he must utilize the specific lien-avoidance powers delineated in § 522(f) of the Bankruptcy Code. *See In re Kazmierczak,* 24 F.3d 1020, 1021 (7th Cir.1994); *Nelson v. Scala,* 192 F.3d 32, 33–34 (1st Cir.1999); *Tower Loan v. Maddox (In re Maddox),* 15 F.3d 1347, 1350–51 & n. 14 (5th Cir. 1994); *In re Parrish,* 186 B.R. 246, 247–48 (Bankr.W.D.Wis.1995). Furthermore, Watkins cannot avoid GMAC's lien on the $11,437.35—even if it impairs an exemption to which she would have been entitled but for the lien at issue—unless the lien falls within the ambit of § 522(f)(1)(B), which provides as follows:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is . . .

(B) a nonpossessory, nonpurchase-money security interest in any—

(i) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(iii) professionally prescribed health aids for the debtor or a dependent of the debtor.

▮▮▮▮ Watkins only meets one or two of the necessary criteria. To be sure, the creditor here, GMAC, does not have possession of the collateral. Also, only the portion of its lien securing the $8,612.51 is a purchase-money security interest under Illinois law, because only that amount secures the purchase price of the Malibu. *See General Elec. Credit Corp. v. Allegretti,* 161 Ill.App.3d 853, 113 Ill.Dec. 736, 515 N.E.2d 721, 723, 725 (1987).[4] The remaining portion of the lien securing the attorneys' fees incurred to collect the purchase price, though, is a nonpurchase-money security interest meeting the requirement of § 522(f)(1)(B). Nevertheless, the collateral at issue here, the totaled Malibu and the $11,437.35 in insurance proceeds, does not normally fit within any of the requisite categories in § 522(f)(1)(B). *In re Ulrich,* 203 B.R. 691, 693 (Bankr.C.D.Ill.1997) (automobiles not included); *In re Donahue,* 249 B.R. 218, 219, 221 (Bankr.D.Mont. 2000) (same); *In re Brennan,* 208 B.R. 448, 454 (Bankr.S.D.Ill.1997) (same); In re Morris, 12 B.R. 321, 351 (Bankr.N.D.Ill. 1981) (same); *In re Felder,* 2000 WL 33710885, *11 & n. 5 (Bankr.D.S.C.2000) (encumbered insurance proceeds and premiums not included in listed categories). Watkins thus cannot use federal law to avoid the lien that blocks her entitlement to a $2000 Illinois wildcard exemption in the $11,437.35 fund. When liens are not avoided pursuant to § 522(f), any exempted property to which they attach remains liable (both during and after the bankruptcy case) for a pre-petition debt secured by the lien. *See* 11 U.S.C. § 522(c)(2); *In re Brennan,* 208 B.R. 448, 451 (Bankr.S.D.Ill. 1997).

### ORDER

Having read the motion filed in this matter, having received and examined the memoranda of law submitted by the par-

---

4. Because the Bankruptcy Code does not define purchase-money security interests, the Court must look to applicable state law to determine exactly what type of interest the secured creditor has. *General Elec. Credit Corp. v. Allegretti,* 161 Ill.App.3d 853, 113 Ill.Dec. 736, 515 N.E.2d 721, 723–25 (1987).

ties in support of their respective positions, having heard the arguments of counsel, and having been fully advised in the premises, the Court hereby finds as follows:

1. GMAC's motion to modify the stay with respect to Watkins' 1999 Chevrolet Malibu is hereby granted.

2. GMAC has 30 days to file with this Court an itemization of the attorneys' fees incurred to collect Watkins' debt for the 1999 Chevrolet Malibu. Watkins will then have 30 days after she or her attorney receives the itemization to file an objection to the reasonableness of the fees otherwise consistent with this opinion.

3. On condition that GMAC ultimately shows that it has incurred at least $2824.84 in reasonable attorneys' fees, National Heritage Insurance Company is ordered to pay the bankruptcy estate property consisting of $11,437.35 in insurance proceeds to GMAC, the secured creditor entitled to possession.