2020 IL App (1st) 181318-U

No. 1-18-1318

Order filed February 14, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| TAGCO USA, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CH 2296 |
| | ) | |
| TREND GLOBAL LLC, RAY GLOBAL INC., | ) | Honorable |
| FRI-YAH BEAUTY, YAHYA YOUNUS, and | ) | Anna H. Demacopoulos, |
| AZEEM AYOOB, | ) | Judge, Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE HALL delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*: The dismissal of plaintiff's complaint pursuant to section 2-615 (735 ILCS 5/2-615 (West 2016)) and 2-619 (735 ILCS 5/2-619 (West 2016)) was proper where an affirmative matter was raised that negated the plaintiff's cause of action and where plaintiff failed to establish all elements of its tortious interference with contractual relations and business relationships claim; and the trial court followed the law when it denied plaintiff's Rule 191(b) (Ill. Sup. Ct. R. 191(b) (eff. Jan. 4, 2013) motion where there was no report of proceedings, bystander's report or agreed upon statement of facts.

¶ 2    Plaintiff Tagco, USA, Inc. (Tagco) filed a complaint for preliminary and permanent injunctive relief against defendants Trend Global, LLC (Trend), Fri-Yah Beauty, Azeem Ayoob (Ayoob), Ray Global Inc. (Ray Global), and Yahya Younus (Younus) related to a Stock Purchase and Settlement Agreement (SPA) and an Exclusive Distributor Agreement (EDA) entered into between Tagco, Younus, and Ray Global.

¶ 3    Tagco is an Illinois corporation that sells products on the internet including electronics, luxury linens, and beauty products.  Haaris Karim is the president of Tagco.

¶ 4    In plaintiff's original verified complaint, filed February 15, 2017, Tagco alleged that it hired Younus in 2011 as a purchaser and that, eventually, Younus acquired ownership interest in Tagco.  As a purchaser, Younus was responsible for most of the purchasing.  Younus left Tagco on February 2015.  The complaint alleged that in December 2015, Younus entered into an agreement with Tagco not to compete with Tagco until March 27, 2017.

¶ 5    The complaint also alleged, on information and belief, that Ayoob, Younus' cousin and partner in Younus' company, Trend, was also a partner in Ray Global and Fri-Yah Beauty.  It alleged that Ayoob was aware of Younus' agreement not to compete with Tagco.  The complaint alleged that Trend is an active Delaware corporation that competes with Tagco and that Ray Global is an Illinois corporation currently not in good standing.

¶ 6    The complaint further alleged that on December 4, 2015, Younus and Tagco entered into a SPA to sell his shares of Tagco back to Tagco for $1,386,111.00 with a condition of "an express restrictive covenant of Non-Solicitation and Non-Competition",  and that Younus also agreed that for every breach, he would pay Tagco $5,000.  Contemporaneous with the SPA, Tagco, Younus and Ray Global entered into an EDA wherein Younus and Ray Global agreed to appoint Tagco as

its exclusive distributor for all its e-commerce activity during the term of the agreement, from December 4, 2015, to March 27, 2017.

¶ 7 Tagco also alleged in its complaint that it had "trade secrets" and "confidential information" to which Younus had direct access during his employment with Tagco. Count I of plaintiff's original complaint requested a temporary restraining order against all defendants; count II alleged a violation of the Illinois Trade Secrets Act (765 ILCS 1065/1 et seq. (West 2016)) against all defendants; count III alleged a breach of the SPA against Younus; count IV alleged breach of the EDA against Younus and Trend; and count V alleged tortious interference with contractual relationship against Ayoob. A cease and desist letter dated November 11, 2016, from plaintiff's attorney to Younus is attached to the original complaint requesting that Younus and Ray Global take steps to cease and desist any e-commerce activities that violate the SPA and EDA.

¶ 8 Plaintiff also filed an emergency motion for temporary restraining order or preliminary injunction against the defendants. On February 23, 2017, plaintiff's emergency motion for a temporary restraining order was denied, a hearing on plaintiff's request for a preliminary injunction was scheduled and plaintiff's motion for expedited discovery was granted.

¶ 9 On March 10, 2017, defendants Trend, Ayoob, and Fri-Yah Beauty filed a motion to dismiss plaintiff's request for injunctive relief and filed a section 2-615 (735 ILCS 5/2-615 (West 2016)) motion to dismiss counts I, II, IV and V, of plaintiff's original complaint. As to count I, defendants asserted that plaintiff's request for injunctive relief arose out of the SPA and EDA, and that the SPA and EDA did not restrict their right to compete against the plaintiff but only restricted Younus and Ray Global's right to compete against the plaintiff. In addition, Younus' obligations not to compete against Tagco would expire on March 27, 2017, and any request for injunctive

relief would be moot by the date of the hearing on the motion, April 20, 2017. As to count II, defendants asserted that plaintiff failed to state a cause of action pursuant to the Trade Secrets Act because its purchaser contact information, product pricing information, and marketing strategy were not trade secrets. Defendants also asserted that count IV against Trend should be dismissed because Trend was not a party to the EDA. Finally, as to count V, they asserted that plaintiff's allegations against Ayoob for tortious interference with contractual relations should be dismissed as conclusory.

¶ 10    On March 16, 2017, defendants Ray Global and Younus filed a motion to stay discovery until after the court ruled on the other defendants' motions to dismiss. On March 20, 2017, the trial court entered an order staying discovery, striking the hearing date of April 20, 2017, and setting a briefing schedule on the motion to dismiss.

¶ 11    On March 23, 2017, Younus and Ray Global filed a 2-615 (735 ILCS 5/2-615 (West 2016)) motion to dismiss asserting that: count I should be dismissed because the court already denied plaintiff's request for a temporary restraining order; count II should be dismissed because there are no trade secrets; and counts III and IV should be dismissed because they contain no factual support and the restrictive covenants are too broad and unenforceable under Illinois law.

¶ 12    Before the court could rule on defendants' motions to dismiss, plaintiff requested leave of court to file its first amended complaint, which was granted.

¶ 13                    Plaintiff's First Amended Complaint

¶ 14    In its first amended complaint, plaintiff alleged: breach of contract against Younus in count I; breach of the EDA against Younus, Ray Global, Trend and Fri-Yah in count II; an accounting against all defendants in count III; and tortious interference with business relationship against

Ayoob, Trend and Fri-Yah in count IV. Allegations against all defendants related to violations of the Trade Secrets Act were removed.

¶ 15    On May 31, 2017, Ray Global and Younus filed a section 2-615 (735 ILCS 5/2-615 (West 2016)) motion to dismiss plaintiff's first amended complaint asserting that: the restrictive covenant in the SPA and EDA were overbroad and unenforceable, and that covenants in general are restraints on trade and are disfavored under Illinois law and, therefore, should be strictly construed to prevent competition *per se*; plaintiff had not properly claimed a breach of confidentiality provision of the EDA; the liquidated damages provision of the EDA was an unenforceable penalty; and punitive damages were not allowed for contract claims.

¶ 16    Defendants, Trend, Fri-Yah Beauty, and Ayoob also filed a section 2-615 (735 ILCS 5/2-615 (West 2016)) motion to dismiss plaintiff's first amended complaint asserting that: Trend and Fri-Yah were not parties to the agreement and therefore could not have breached it; plaintiff had not sufficiently pled a claim for equitable accounting because there was no fiduciary relationship between them and the plaintiff; and the tortious interference with business relations should be dismissed as plaintiff has failed to allege that there was a business relationship between it and the defendants.

¶ 17    On September 14, 2017, the court entered an order which dismissed: count I without prejudice (breach of contract against Younus): count II with prejudice as to Trend and Fri-Yah Beauty (breach of EDA); count III with prejudice (an accounting against all defendants); and count IV without prejudice (tortious interference with business relationship against Ayoob, Trend and Fri-Yah). The court also dismissed all claims for punitive damages with prejudice. However, the court denied Ray Global's motion to dismiss count II (breach of EDA), reserved ruling on

plaintiff's claim for contractual damages, and granted plaintiff leave to file its second amended complaint.

¶ 18                     Plaintiff's Second Amended Complaint

¶ 19    On October 25, 2017, plaintiff filed its second amended complaint alleging: breach of the SPA and EDA against Younus and Ray Global in counts I and II; and tortious interference with business relationship (based upon the SPA and EDA) against Ayoob, Trend, and Fri-Yah in counts III and IV.

¶ 20    On November 11, 2017, defendants Trend, Fri-Yah Beauty, and Ayoob filed a 2-615 (735 ILCS 5/2-615 (West 2016)) motion to dismiss the second amended complaint asserting that the deficiencies in the first amended complaint were not cured because plaintiff still failed to plead the identity of any "buyers" with whom it had relationships and with whom defendants interfered or the basis of the alleged expectancy which is a necessary element of a tortious interference with business relationship claim.

¶ 21    On December 8, 2017, Ray Global and Younus filed a section 2-619.1 (735 ILCS 5/2-619.1 (West 2016)) motion to dismiss asserting, for the first time, that plaintiff breached paragraph 2.2 of the EDA, which provided that plaintiff: "shall not directly or indirectly sell, lease or otherwise distribute or service any product which competes with the Products without [defendant Ray Global's] prior written consent." Therefore, plaintiff could not enforce the contract against defendants. Defendants attached an affidavit from Younus which stated, in relevant part:

> "2. In 2011, I began operating Tagco USA, Inc. ("Tagco" or "Plaintiff") as an employee and 50% shareholder.
>
> 3. In February 2015, I left my employment with Tagco after the co-owner, Haaris Karim ("Karim"), demanded an increase in his ownership interest. Subsequently, I

began to operate a new entity, Ray Global, Inc. ("Ray Global"), and I became President of that entity.

4.  On December 4, 2015, 10 months after I left my employment, I entered into two agreements with Plaintiff. These agreements were a Stock Purchase and Settlement Agreement ("SPA"), and an Exclusive Distributor Agreement ("EDA") (collectively the "Agreements").

\* \* \*

6.  At all relevant times, Plaintiff did not sell, or manufacture, any unique goods or services to its customers, but instead sold goods and products of all kinds through E-Commerce. Essentially, Plaintiff was a reseller with no specific niche, and its competition was other resellers who sold identical goods and services over the internet to the same customers.

\* \* \*

8.  Plaintiff never obtained or even sought my consent to sell, lease or distribute Products while the EDA was in effect, even though this was a requirement under the terms of the EDA.

9.  Prices on products sold on the internet frequently change, thus it is very likely that the prices that Plaintiff charged for products when I was employed were different 10 months later.

10.  I do not recall what prices Plaintiff charged for most of the products at the time I left my employment, and I certainly was not aware of this information 10 months later.

11.  I do not know what customers left the Plaintiff in the 10[-] month period after I left my employment, and I did not know of any new customers that Plaintiff obtained during that time period.

12.  I executed the Agreements as part of the settlement of my claims against Plaintiff. Part of the settlement included the transfer of my shares of Tagco.

13.  On Plaintiff's 2012-2014 Federal Tax Returns and K-1 Forms, was allocated business income of $53,302.00, $228,749.00 and $336,380.00, respectively. I never received distributions of these amounts.

14.  At all relevant times, Karim controlled Plaintiff's finances and oversaw the preparation of the corporate income tax returns and he created the phantom income."

¶ 22    On January 5, 2018, plaintiff filed a motion to continue defendants Ray Global and Younus', motion to dismiss in order to conduct discovery pursuant to Supreme Court Rule 191(b)

(Ill. Sup. Ct. R. 191(b) (eff. Jan. 4, 2013)). The motion as denied after a hearing, however, there is no report of proceedings in the record on appeal related to this hearing.

¶ 23 In its response to Ray Global and Younus' section 2-619 (735 ILCS 5/2-619 (West 2016)) motion to dismiss, plaintiff asserted, for the first time, that a scrivener's error occurred when the terms "distributor" (referring to the plaintiff) and "company" (referring to defendant Ray Global) were "inadvertently swapped" and that "Paragraph 2.2 of the EDA is internally inconsistent with the other provisions of the agreement and with the opening recitals of the agreement." Plaintiff asserts that, "It was the clear intent of the two equally sophisticated contracting parties that this provision of the EDA was to restrict the Defendants from selling, leasing, or otherwise distributing any product that competes with TAGCO, unless TAGCO is acting as the exclusive distributor."

¶ 24 Plaintiff also asserted that: the language of the agreement was not overly broad because the restrictions only pertained to Tagco's five customers and the provision allowed Younus to engage in sales, as long as it is pursuant to the language agreed upon in the EDA; it adequately alleged a breach of confidentiality; and the liquidated damages provisions were enforceable.

¶ 25 Plaintiff attached an affidavit from Karim to its response, which stated, in relevant part:

> "5. Prior to the execution of any agreement and prior to Defendant Younus leaving TAGCO in February 2015. TAGCO transferred via wire transfer the sum of $460,000 to Defendant Younus. This constituted the bulk of the money due to Defendant Younus.
>
> 6. On December 4, 2015. TAGCO and Defendant Younus entered into a Stock Purchasing and Settlement Agreement ("SPSA") wherein Defendant Younus agreed not to compete with TAGCO until March 27, 2017. It was the intention of the parties to restrict Defendant Younus from using the company Defendant Ray Global or any entity to compete with TAGCO for the term of the agreement. In exchange for this, TAGCO memorialized the February 2015 payment, and made an additional payment of $926,111.00 for a total transfer of $1,386,111.00 to Defendant Younus.
>
> * * *

8. It was the parties' intent for Defendant Younus and his company to use TAGCO as Defendant Younus and his company's exclusive distributor during the term of the agreement.

\* \* \*

11. At both the time that Defendant Younus left TAGCO and at the time of the execution of the Agreements between TAGCO and Defendants, approximately 99% of TAGCO's business resulted from five (5) customers.

12. The prices of the products sold by TAGCO to its customers did not significantly change over the course of the period between when Defendant Younus left TAGCO and the execution of the SPSA and EDA. The most the price of a product would fluctuate over the course of this period is less than 50 cents. This fluctuation is an insignificant amount which would allow Defendant Younus to use confidential information regarding customers and pricing that he obtained while employed at TAGCO to directly compete with TAGCO.

13. Furthermore, the major customers of TAGCO did not change over the course of the period between when Defendant Younus left TAGCO and the execution of the SPSA and the EDA."

The affidavit did not address the alleged "scrivener's error" nor did it address defendants' assertion that plaintiff breached the agreement.

¶ 26 On May 16, 2018, after a hearing on defendants' motions to dismiss, the court reasoned that the SPA and EDA were one agreement and granted defendants Younus and Ray Global's section 2-619 (735 ILCS 5/2-619 (West 2016)) motion to dismiss as to counts I (breach of SPA) and II (breach of EDA). The court further found that plaintiff violated the agreement and, therefore, could not enforce it; and it granted defendants Trend, Ayoob and Fri-Yah's section 2-615 (735 ILCS 5/2-615 (West 2016)) motion to dismiss counts III and IV. The order also indicated that the court preserved arguments and did not render a decision on section 2-615 (735 ILCS 5/2-

615 (West 2016)) motion arguments.[1] The court noted that the order was a "final and appealable order." Once again, there is no report of the proceedings in the record on appeal related to the May 16, 2018, hearing.

¶ 27 On June 14, 2018, plaintiff filed its notice of appeal. Plaintiff raises three issues on appeal: (1) whether the trial court erred in dismissing counts I and II of the second amended complaint, with prejudice, pursuant to section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2016)) where defendants failed to meet their burden of showing that the claims are barred by other affirmative matter avoiding the legal effect of or defeating the claims; (2) whether the trial court should have allowed plaintiff to conduct discovery based on Younus and Ray Global Inc.'s filing motions to dismiss and a supporting affidavit; and (3) whether the trial court erred in dismissing counts III and IV of the second amended complaint, with prejudice, pursuant to section 2-615 (735 ILCS 5/2-615 (West 2016)) where plaintiff alleged all the necessary elements of claims for tortious interference with contracts and business relationships.

¶ 28 Relevant Agreement Provisions

¶ 29 The relevant provisions of the SPA and EDA at issue are provided here. Regarding the SPA, the recitals reference a dispute between plaintiff and defendant that gave rise to the execution of the SPA in lieu of litigation threatened by Younus. Namely, it provides:

"WHEREAS, Seller claims ownership of shares of common stock of Tagco (the "Tagco Shares") which Tagco disputes;

WHEREAS, other certain disputes have arisen between Seller and Tagco and Karim; including if Seller owns any interest in Tagco;

---

[1] This portion of the court's order is confusing. However, since defendants Younus and Ray Global filed a combined motion to dismiss, we presume that the court decided the case on the section 2-619 motion and reserved argument on the section 2-615 motion to dismiss.

WHEREAS, Seller has agreed to sell the disputed interest of TagCo Shares and TagCo has agreed to purchase the Tagco Shares from Seller, all on the terms, and subject to the conditions, set forth in this Purchase and Settlement Agreement in order to end the dispute and threatened litigation by Younus and the Company, the validity of the claims of Younus and the Company, which Karim and Tagco deny. The Parties nonetheless wish to enter into this Agreement in order to free themselves from a disputed claim and avoid the cost and risk of litigation."

¶ 30    Paragraph 16, Non-solicitation and Non-Competition, provides:

"The parties acknowledge that each has executed an Exclusive Distributor Agreement contemporaneously with this Agreement. Until March 27, 2017, Younus may not solicit the customers of TAGCO in the "E-Commerce Territory", which consists of all sales of products on the Internet, unless it is done in the manner which is allowed under the Exclusive Distributor Agreement. Younus will, for every breach of this provision, pay to TAGCO $5,000.00 or actual damages as TagCo may elect, and it is declared and agreed by the parties that this sum shall, without proof, be deemed to represent the damages actually sustained by TAGCO by reason of the breach."

¶ 31    Paragraph 22, Drafting, provides:

"The terms of this Purchase Agreement have been considered and negotiated between the Parties in an arm's length transaction, and shall not be construed against either Party by reason of the drafting or preparation hereof."

¶ 32    The EDA refers to Tagco as a "distributor" and refers to Ray Global as "company." "The term "Products" means and includes all items marketed through TagCo which Younus may seek to sell through E-commerce. The "E-Commerce Territory" consists of all sales of products on the Internet."

¶ 33    Paragraph 2.1 provides:

"The Company hereby appoints Distributor as its exclusive (except as set forth below) distributor for all its E- Commerce activity and sales during the term of this Agreement."

¶ 34    Paragraph 2.2, Distributor Duties, contains a provision at the end of that paragraph, the interpretation of which is hotly contested here:

"2.2 Distributor Duties

Distributor agrees to market the Products in E-Commerce

(a) Promotion and Marketing

Distributor will engage in advertising and sales promotion activities in E-Commerce for the Products which the Company seeks to be marketed by Distributor.

(b) Places of Business Inventory

Distributor has the marketing and warehouse network sufficient to handle the marketing of the products provided by the Company. Distributor shall handle all customer service and contacts. Under no circumstances shall the Company contact during the term of this agreement any customers unless directed in writing by Tagco.

(c) General Conduct

Distributor will not engage in any deceptive, misleading, illegal or unethical business practice in marketing the products.

Distributor shall not directly or indirectly sell, lease or otherwise distribute or service any product which competes with the Products without the Company's prior written consent. The Company reserves the right in its sole judgment to determine whether a competitive conflict exists."

¶ 35    Another contested provision is Paragraph 8.12, Confidential Information, which provides:

"Distributor agrees not to disclose to any person outside of its employ, and, for a period of two (2) years from the termination of this Agreement, not to use for any purpose other than to fulfill its obligations under this Agreement, any information which is disclosed to Distributor by the Company in confidence and which is not otherwise publicly available. Distributor agrees to take all preventive measures and precautions to guard against and prevent any use or disclosure of such confidential information by its partners, employees, agents, or other persons consistent with the intent of this Paragraph. Distributor further agrees not to disclose to the Company any information which Distributor deems to be confidential, and it is understood that any information received by the Company will not be of a confidential nature."

¶ 36                                  DISCUSSION

- 12 -

¶ 37                    A. Failure to File Report of Proceedings

¶ 38    At the outset, we note that plaintiff has not filed a report of proceedings, a bystander's

report or an agreed upon statement of facts.  "This court has long held that in order to support a

claim of error on appeal the appellant has the burden to present a sufficiently complete record."

*Webster v. Hartman*, 195 Ill. 2d 426, 432–33 (2001) (citing *Foutch v. O'Bryant,* 99 Ill. 2d 389,

391–92 (1984) (the absence of such a record on appeal, it will be presumed that the order entered

by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which

may arise from the incompleteness of the record will be resolved against the appellant).  However,

the applicable standard of review is determinative.  Providing a complete record on appeal is good

practice but is not prohibitive of addressing the issues on appeal where, as here, the standard of

review of a 2-615 (735 ILCS 5/2-615 (West 2016)) and/or 2-619 (735 ILCS 5/2-619 (West 2016))

motion to dismiss is *de novo*.  See *Friedl v. Airsource, Inc*., 323 Ill. App. 3d 1039, 1042 n.2 (2001)

(because the matter before us is reviewed *de novo,* the report of proceedings providing the rationale

for the trial court's dismissal is not essential to our disposition and we consider this appeal on its

merits) (citing *Kedzie & 103rd Currency Exchange v. Hodge,* 156 Ill. 2d 112, 115–16 (1993)).

Therefore, plaintiff's issues on appeal related to defendants' motions to dismiss will be addressed.

¶ 39    Conversely, plaintiff's arguments on appeal related to the denial of its Rule 191(b) motion

for discovery are reviewed under an abuse of discretion standard.  *Corral v. Mervis Industries,*

*Inc.,* 217 Ill. 2d 144, 156 (2005) (citing *Foutch,* 99 Ill. 2d at 391–92).   In the area of pretrial

discovery, the court's discretionary powers are extremely broad.  *Wynne v. Loyola Univ. of*

*Chicago*, 318 Ill. App. 3d 443, 455 (2000).  Absent a manifest abuse of that discretion, the pretrial

discovery rulings of the circuit court will not be interfered with on appeal. *Ragan v. Columbia*

*Mutual Insurance Co.*, 183 Ill. 2d 342, 352 (1998); *Wynne*, 318 Ill. App. 3d at 455. "Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding." *Corral,* 217 Ill. 2d at 156 (quoting *Webster v. Hartman,* 195 Ill. 2d 426, 432 (2001)). Therefore, we will presume the trial court followed the law when it denied plaintiff's Rule 191(b) motion. *Foutch,* 99 Ill. 2d at 391–92.

¶ 40         B. Defendants' Section 2-619.1 Motion to Dismiss (Younus and Ray Global)

¶ 41     On appeal, plaintiff first argues that the trial court erred when it misapplied section 2-619(a)(9) because defendants failed to show that plaintiff's claims were barred by other affirmative matter. Defendants filed a motion pursuant to section 2-619.1 of the Code which permits motions pursuant to section 2-615 (735 ILCS 5/2-615 (West 2016)), section 2-619 (735 ILCS 5/2-619 (West 2016)), and section 2-1005 (735 ILCS 5/2-619.1 (West 2016)). A motion to dismiss filed pursuant to section 2–619(a)(9) admits the legal sufficiency of the plaintiff's claim but asserts an affirmative defense or matter outside of the pleading that avoids or defeats the plaintiff's claim. *Barber v. American Airlines, Inc.,* 241 Ill. 2d 450, 455 (2011); *Kedzie & 103rd Currency Exchange, Inc,* 156 Ill. 2d at 115. When reviewing an order granting a motion to dismiss under section 2–619, we may consider all facts presented in the pleadings, affidavits, and depositions found in the record. See *Torcasso v. Standard Outdoor Sales, Inc.,* 157 Ill. 2d 484, 486, 193 (1993). The pleadings and supporting documents must be interpreted in the light most favorable to the nonmoving party. *Orlak v. Loyola University Health System,* 228 Ill. 2d 1, 7 (2007). Moreover, we afford no deference to the determinations by the lower courts. *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 396 (2009); *DeLuna v. Burciaga,* 223 Ill. 2d 49, 59 (2006).

¶ 42   A complaint may be dismissed under section 2–619 "when the asserted claim is barred by other affirmative matter that defeats the claim or voids its legal effect." *Turner v. Fletcher,* 302 Ill. App. 3d 1051, 1055 (1999). The term "'affirmative matter' refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Glisson v. City of Marion,* 188 Ill. 2d 211, 220 (1999). The term encompasses any defense *other than* a negation of the essential allegations of the plaintiff's cause of action. *Kedzie & 103rd Currency Exchange,* 156 Ill. 2d at 115; *Rogalla v. Christie Clinic, P.C.*, 341 Ill. App. 3d 410, 422 (2003).

¶ 43   The affirmative matter asserted by the defendant must be supported by adequate affidavit if the affirmative matter asserted is not apparent on the face of the complaint. *Kedzie & 103rd Currency Exchange,* 156 Ill. 2d at 116. The burden then shifts to the plaintiff who must establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. *Id.* In order to do this, the plaintiff must submit a counter-affidavit to refute evidentiary facts properly asserted by the defendant's affidavit supporting the motion or the facts are deemed admitted. *Id.* After considering the pleadings and affidavits, the trial court may grant the motion and dismiss the cause of action if it finds that the plaintiff has failed to carry the shifted burden. *Id.* An appeal from such a dismissal must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. *Id.*

¶ 44   Counts I and II of plaintiff's complaint alleged breach of the SPA and EDA against defendants Younus and Ray Global. In count I, plaintiff asserts that defendants Younus and Ray Global breached the SPA, "by soliciting the customers of Tagco in the E-Commerce Territory

prior to March 27, 2017, in direct violation of Section 16 of the SPSA." Count II alleged that defendants breached the EDA by failing to use Tagco as its exclusive distributor for all its E-Commerce activity and sales until March 27, 2017, in direct violation of Section 2.1 of the EDA."

¶ 45    In its combined motion to dismiss, defendants raised an affirmative matter and argued that: plaintiff could not enforce an agreement it materially breached; the restrictive covenants were overly broad and unenforceable; plaintiff did not have near-permanent relationships with its customers; and the 10-month gap between Younus' employment and the enforcement of the agreement prohibits enforcement of the restrictive covenants.

¶ 46    Prior to addressing the merits of the arguments, preliminarily, it is imperative that we focus on the overall intent of the parties in entering into this agreement. The face of the agreement clarifies its intent as memorialized in the "Whereas" clauses of the SPA agreement which was not simply to buy and sell stock following defendant Younus' departure from Tagco's employment. This agreement was entered into to resolve an ongoing dispute. The SPA provides,

> "WHEREAS, Seller claims ownership of shares of common stock of Tagco (the "Tagco Shares") *which Tagco disputes*; WHEREAS, *other certain disputes* have arisen between Seller and Tagco and Karim; including if Seller owns any interest in Tagco; WHEREAS, *Seller has agreed to sell the disputed interest* of Tagco Shares and Tagco has agreed to purchase the Tagco Shares from Seller, all on the terms, and subject to the conditions, set forth in this Purchase and Settlement Agreement *in order to end the dispute and threatened litigation by Younus and the Company, the validity of the claims of Younus and the Company, which Karim and Tagco deny. The Parties nonetheless wish to enter into this Agreement in order to free themselves from a disputed claim and avoid the cost and risk of litigation*." (Emphasis added on the original)

With this overall understanding of the intent of the parties, we now turn to the merits.

¶ 47    In the affidavit supporting defendants Younus and Ray Global's motion to dismiss, referring to paragraph 2.2 of the EDA, Younus attested that, "Plaintiff never obtained or even

sought my consent to sell, lease or distribute Products while the EDA was in effect, even though this was a requirement under the terms of the EDA." Defendants also referred to plaintiff's complaint as support that there was a breach where plaintiff alleged that it sold products over the internet as a direct competitor of other sellers.

¶ 48 However, plaintiff asserts that Younus' affidavit was refuted by plaintiff's response to the motion to dismiss which attached Karim's affidavit. We disagree.

¶ 49 The record is clear that plaintiff never denied that it breached paragraph 2.2 of the EDA. In addition, there is nothing in Karim's affidavit that states that Younus' attestation regarding plaintiff's breach was untrue or incorrect. The case law is clear that if the affirmative matter asserted by the defendant is supported by an adequate affidavit and if the affirmative matter asserted is not apparent on the face of the complaint, the burden then shifts to the plaintiff who must establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. *Kedzie & 103rd Currency Exchange,* 156 Ill. 2d at 115-16. Here, the affirmative matter did not negate the essential elements of plaintiff's complaint, but it negated the cause of action. *Kedzie & 103rd Currency Exchange,* 156 Ill. 2d at 115. Therefore, plaintiff was required to submit a counter-affidavit to refute evidentiary facts properly asserted by the defendant's affidavit, which it did not do.

¶ 50 Attempting to avoid the negation of its claim, plaintiff argues in the alternative that the trial court erred by failing to use extrinsic evidence to clarify ambiguities between the SPA and the EDA. Plaintiff asserts that this affirmative matter cannot be relied on as paragraph 2.2 of the EDA contained a "scrivener's error" and the terms "distributor" and "company" were "inadvertently swapped."

¶ 51    First, despite our acknowledgement of the relevant standard of review, we find it a bit disingenuous for plaintiff to identify error in the trial court's ruling and not provide a report of proceedings for us to analyze the basis for its disposition.  Second, we find no ambiguity here. Parol evidence and extrinsic evidence is allowed if there is ambiguity in the contract which warrants it. "Traditional contract interpretation principles in Illinois require that: '[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.'" *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill. 2d 457, 462 (1999) (citing *Western Illinois Oil Co. v. Thompson,* 26 Ill. 2d 287, 291 (1962)). If the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence. *Air Safety, Inc.,* 185 Ill. 2d at 462 (citing *Farm Credit Bank v. Whitlock,* 144 Ill. 2d 440, 447 (1991)).

¶ 52    When construing the language of a contract, our primary objective is to give effect to the intent possessed by the parties at the time they entered the agreement. *Regency Commercial Associates, LLC v. Lopax, Inc.,* 373 Ill. App. 3d 270, 277 (2007). The agreement is to be interpreted as a whole and, when possible, effect and meaning must be given to every provision in the contract. "Where the terms of a contract are clear and unambiguous, they will be given their natural and ordinary meanings." *Thakral v. Mattran,* 156 Ill. App. 3d 849, 854 (1987). In the absence of an ambiguity, the parties' intent is ascertained solely from the words of the contract itself, and we will not interpret a contract in a manner that would nullify or render provisions meaningless or that is contrary to the plain and obvious meaning of the language used. *Thakral,* 156 Ill. App. 3d at 854; *Regency Commercial Associates, LLC,* 373 Ill. App. 3d at 277.

¶ 53　It is well settled that when parties agree to and insert language into a contract, the presumption is that it was done purposefully, and the language employed is to be given effect. *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 215 (2007) (citing *Regency Commercial Associates, LLC,* 373 Ill. App. 3d at 277).

¶ 54　Paragraph 2.2 is the last paragraph in the section of the EDA entitled, "Distributor Duties." Each provision under this section sets forth the duties of the distributor – plaintiff – vis-à-vis the defendant Ray Global, and what actions it will refrain from as part of the EDA. If, as plaintiff urges, the terms distributor (plaintiff) and company (defendant, Ray Global) were inadvertently swapped, it is unlikely that paragraph 2.2 would have included this provision. Paragraph 5 of the EDA specifically sets forth the "The Company's Support Obligations" where the defendant Ray Global's obligations are delineated. Finally, each page contains the initials of the parties, including those sections that contained stricken language. If the parties intended to change paragraph 2.2, it would have appeared in the face of the agreement.

¶ 55　Therefore, we find, that as a matter of law, defendants' section 2-619 motion to dismiss based upon the existence of an affirmative matter was proper. See *Kedzie& 103rd Currency Exchange,* 156 Ill. 2d at 115-16 (after considering the pleadings and affidavits, the trial court may grant the motion and dismiss the cause of action if it finds that the plaintiff has failed to carry the shifted burden. An appeal from such a dismissal must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.)

¶ 56　　　C. Defendants' Section 2-615 Motion to Dismiss (Trend, Ayoob and Global)

¶ 57 On appeal, plaintiff further argues that it has sufficiently alleged the requisite elements for a claim of tortious interference with contractual relations and business relationships against defendants. A section 2-615 motion to dismiss is a challenge to the legal sufficiency of a complaint. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2008). "The critical inquiry is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002). The court must accept all well-pleaded facts in the complaint as true. *Wakulich*, 203 Ill. 2d at 228. "Thus, a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). The standard of review for section 2-615 dismissals is *de novo. Id.*

¶ 58 In its second amended complaint, plaintiff alleged that, "Ayoob, Trend, and Fri-Yah intentionally interfered with Tagco's business relationships with buyers throughout the restrictive covenant period of the SPSA * * * through facilitating and assisting Younus and Ray's breach of this agreement to not compete with Tagco, and knowingly using Tagco confidential information * * * Ayoob and Younus improperly caused Trend and Fri-Yah to use the restricted confidential information of Tagco to operate as direct competitors of Tagco and sell products in the E-Commerce Territory in violation of the SPSA, and solicited buyers of Tagco covered by the SPSA." It also alleged that, "Ayoob with full knowledge" of the agreement plaintiff and the Younus, "used Trend and Fri-Yah to offer prices on products previously sold by Tagco and other products at a price slightly below Tagco's" and undercut Tagco's prices, and facilitated and assisted Younus to breach the agreement.

¶ 59    Plaintiff also alleged that these defendants, "facilitated and assisted Younus and Ray" to sell products through E-Commerce, without using Tagco as the distributor, "with full knowledge of the EDA between Tagco and Younus, and using the knowledge of confidential information gained from YOUNUS's former employment with Tagco * * * to solicit sales in the E-Commerce territory without the involvement of Tagco as the Exclusive Distributor, in direct violation of the Distributor Appointment provision in the EDA." Plaintiff also alleged that Ayoob, "would use Trend and Fri-Yah to offer prices on products previously sold by Tagco and other products at a price slightly below Tagco's * * * undercutting Tagco's business * * * and incentivizing Tagco's customers to do business with Younus' companies instead."

¶ 60    The elements of tortious interference with contractual business relationships are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 131 Ill. 2d 145, 154–55 (1989).

¶ 61    In their motion to dismiss, defendants argued that plaintiff failed to satisfy the third element because they did not identify the "buyers" with which it had relationships with, therefore, failing to establish that there was an intentional and unjustified inducement of a breach of the contract. The defendants are correct.

¶ 62    Plaintiff repeatedly alleged that Ayoob, Trend, and Fri-Yah, "intentionally interfered with buyers throughout the restrictive covenant period" and that its "business relationships with buyers

have been disrupted and injured" but it does not state who these buyers are or that there was a breach.

¶ 63    On appeal, plaintiff asserts that it did identify Groupon as one of its buyers. However, plaintiff's reference to Groupon is in an allegation which references wrongdoing by Younus. In paragraph 30 of plaintiff's second amended complaint it alleged, "For example, Younus has sold to Groupon through Trend and Fri-Yah in direct violation of the Non-Solicitation and Non-Competition provision." Oddly, in its counts against defendants Ayoob, Trend and Fri-Yah, plaintiff does not specifically allege that Ayoob, Trend, and Fri-Yah interfered with any business relationship the plaintiff had with Groupon or that these defendants intentionally and unjustifiably induced Groupon to breach a contract if such a contract were in place. Therefore, plaintiff has failed to state a cause of action for tortious interference with contractual business relationships.

¶ 64    Somewhat perplexing, on appeal plaintiff argues that it has also properly stated a claim for tortious interference with a *prospective* business advantage. Yet, the allegations in its complaint alleged tortious interference with [an existing] business relationship. The elements of the tortious interference with existing business relationships and tortious interference with a prospective business advantage are different and should have been separately alleged. *See Belden Corp. v. InterNorth, Inc.*, 90 Ill. App. 3d 547, 552 (1980) (the elements of the tort of interference with prospective advantage are similar, but not identical. Unlike the right to receive the benefits of a contract, the right to engage in a business relationship is not absolute and must be exercised with regard to the rights of others. The rights of others most commonly take the form of lawful competition, which constitutes a privileged interference with another's business.)

¶ 65    Plaintiff's argument regarding its tortious interference with a prospective business advantage is being raised for the first time on appeal and is therefore forfeited. *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 ("Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal").  Waiver aside, there is nothing in the record on appeal that would support this new claim.

¶ 66                                          CONCLUSION

¶ 67    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 68    Affirmed.